LINCOLN AND DAWSON COUNTY IRRIGATION DISTRICT v. ISAAC A. McNEAL.

FILED OCTOBER 3, 1900.   No. 11,376.

1. **Corporation:** DEALING WITH OFFICERS: AGENTS: LEGISLATION: LIMITATION. A person dealing with the officers or agents of a public corporation is required to act with reference to the authority, limitations and restrictions imposed upon such officers and agents by the legislation authorizing the organization and government of such corporation.

2. **Irrigation District:** STATUTE: ORGANIZATION: PURPOSE: PUBLIC AGENTS. An irrigation district organized under the provisions of chapter 70, Session Laws, 1895, is a public corporation organized for a public purpose, to-wit, to furnish water for irrigation purposes, to be usefully and beneficially applied to the

lands within the district, and its agents are public agents of the state. *Board of Directors v. Collins*, 46 Nebr., 411, followed.

3. **Irrigation Act: Expenses: Construction: Fund: Liability.** Under section 24 of the irrigation act, all expenses incurred for construction work are to be paid wholly out of the construction fund, and the board of directors is not authorized to incur any indebtedness or liability against the district for labor performed in the work of construction where no construction fund has been created out of which such indebtedness may be paid.

4. ————: **Proposals: Advertisement: Notice: Authority of Board.** Under the provisions of section 22 of the irrigation act mentioned, proposals for construction work should be advertised for by published notice, as in the section provided, and the bid or bids received under such notice either accepted or rejected, before the board is authorized to proceed to construct the work under its own superintendence with the labor of the residents of the district.

5. **Contract: Liability: Reasonable Value.** Where a contract is entered into which a board of directors is authorized to make, and the district has received the benefits of the contract, it would be liable for the reasonable value of the services rendered, not exceeding the contract price, notwithstanding the contract was illegal because of the manner in which it was entered into.

Error to the district court for Dawson county. Tried below before Sullivan, J. *Reversed.*

*W. D. Giffin* and *E. A. Cook*, for plaintiff in error.

*George W. Thomas* and *G. W. Fox*, contra.

Holcomb, J.

This action is submitted on a printed abstract of the record and briefs of counsel in the case. The plaintiff in error, defendant below, is a corporation organized under and by virtue of an act of the legislature passed in 1895, providing for the organization and government of irrigation districts. Session Laws, 1895, ch. 70. The action is founded upon a claim for work and labor performed in the partial excavation of an irrigating canal proposed to be constructed by the district. The material allegations of the petition, in substance, are: The organization

of the district; the voting of bonds by a majority of the electors in an amount sufficient to pay for the estimated cost of the proposed canal, and the issuance and execution thereof by the proper officers; that the bonds were at all times, and at the beginning of the action, in the possession of the defendant, and had not been sold; that in December, 1895, the district desiring to have work begun on the proposed canal, by and through its board of directors, employed the plaintiff to do a certain amount of work in excavating said canal, said agreement not being in writing; that for such work the plaintiff was to be paid in bonds of the defendant corporation, provided the bonds could not be sold, but if said bonds were sold, then plaintiff was to be paid in money, in an amount not exceeding the lowest bid made for like work by a responsible bidder after advertising for bids; that under said agreement the plaintiff removed 2,980 cubic yards of dirt, and that the reasonable value thereof was $178.80. It is alleged that the defendant did not advertise or receive bids for work similar to that performed by the plaintiff, but received bids for similar work combined with other work of a different nature; that the work was done on, and prior to, January 31, 1896; that the plaintiff informed the defendant he would take bonds at par for the work done, and demanded that he be so paid, or paid in money, and that defendant refused to pay him either. Judgment was prayed for in the sum of $178.80 and interest. The answer admits the organization of the district, and otherwise in the main consists of a general denial. It denies liability to plaintiff for the alleged work; denies authority to enter into the contract pleaded, and alleges that it did not, and has not made any contract with the plaintiff, and was without authority under the law to enter into a binding contract; it alleges that it notified and warned the plaintiff that, should he do any work on its proposed canal, he would do so at his peril. It is also alleged that the petition failed to state facts sufficient to entitle plaintiff to recover. On the trial, objection was raised to the

introduction of any evidence, because the petition failed to state a cause of action. Judgment was rendered for the plaintiff for the amount prayed for, and the case is, by error proceeding, brought here for review. The case was tried upon a stipulation of facts, which will appear in the further discussion of the case.

But two underlying questions are presented for consideration: First, does the petition state facts sufficient to constitute a cause of action; and, second, under the facts as stipulated, is the plaintiff entitled to judgment? A rightful determination of these questions, which we are disposed to consider together, hinges upon a proper construction of the different sections of the irrigation law referred to. By sections 9 and 10 a board of directors of an irrigation district is provided for, and their powers and duties defined. By section 13 it is provided that, for the purpose of constructing necessary irrigating canals, and acquiring the necessary property and rights, and otherwise carrying out the provisions of the act, the board of directors are to determine and estimate the amount of money necessary to be raised, and to call a special election, at which shall be submitted to the electors the question of voting bonds of said district, in the amount determined, and for the purpose mentioned. By section 14 it is provided that bonds may be sold from time to time, as may be most advantageous to raise the money for the construction of canals, and the acquisition of property and rights, and in otherwise carrying out the purposes of the act. The manner in which the bonds are to be sold is prescribed by the section, and it is provided that, in no event, shall such bonds be sold for less than ninety-five per cent of their face value. By section 22 it is provided that, after adopting a plan for the work contemplated, the board shall give notice by publication, inviting bids for the construction of all, or a part of, the proposed work, describing the work to be done, and inviting sealed proposals therefor, stating that the contract will be let to the lowest responsible bidder, and giving

notice of the time and place for opening such proposals. It is provided that the board shall let the work, either in portions or as a whole, to the lowest responsible bidder, or they can reject any or all bids, and readvertise for proposals, or may proceed to construct the work under their own superintendence with the labor of the residents of the district. By section 24 of the act, as it then existed, it is provided that the costs and expenses of purchasing and acquiring property, and of constructing the works therein provided for, shall be wholly paid out of the construction fund. Provisions are therein made for levy of assessments and tolls for salaries of officers, current expenditures, repairs, etc. By section 29 it is declared that "the board of directors, or other officers of the district, shall have no power to incur any debt or liability whatever, either by issuing bonds or otherwise, in excess of the express provisions of this act, and any debt or liability incurred in excess of such express provisions shall be and remain absolutely void."

It is unnecessary here to speak of the alternative feature of the contract, mentioned in the petition, involving the alleged agreement of delivery and acceptance of the bonds of the district at their face value for the work of construction alleged to have been performed by the plaintiff. That branch of the controversy is not before us for consideration. The action was tried in the court below as one at law for the recovery of a money judgment, and, for the purpose of this case, a right of recovery is to be determined solely on defendant's liability for a judgment for money for the value of the services performed under the alleged contract.

The section of the statute providing for the disposition of bonds, as it stood at the time the work was being performed, contemplated that they should be sold, after advertisement, to the highest bidder, and for not less than ninety-five per cent of their face value, the proceeds to constitute a construction fund, to be used in the construction of the contemplated canal. This seemed to be

the view of the legislature, which, at its last session, amended the section, by providing, under certain conditions therein mentioned, for an exchange of bonds for the work of construction. The original and amended sections were considered and construed in *Baltes v. Farmers Irrigation District*, 60 Nebr., 310. It appears by the stipulation of facts that a proposition to destroy the bonds, before authorized to be issued, was submitted to the voters of the district in June, 1898, and adopted, and in pursuance thereof, by order of the board of directors, the bonds were destroyed in the succeeding month. As to what effect this proceeding had on the prior transaction, we are not in this case required to express an opinion. By the stipulated facts, the bonds authorized to be issued by the defendant district were advertised for sale; "but no one could be found who was ready to purchase said bonds." From this stipulation and the allegation in the petition that the bonds authorized to be issued were never sold, but remained the property of the district, but one inference can be drawn, viz., that the district officers were unsuccessful in disposing of the bonds at the minimum sum permitted by law, and therefore the bonds remained in the hands of the board of directors of the district, undisposed of.

This brings us directly to the proposition of whether a cause of action can be stated in the petition, when it is disclosed on the face of it that no construction fund, as contemplated by statute, has been created out of which can be paid the expenses incurred in the construction work. Under the stipulated facts it is shown that, after bonds had been voted, there was an order of the board of directors providing that the residents of the district might go to work on its canal, but all who did go to work must take their chances as to pay for such work, and must take bonds instead of money if the bonds could not be sold. It was under the authority thus attempted to be given that the defendant did the work for which suit is brought to recover the value thereof. At the time the work was

performed the bonds had not been advertised and offered
for sale; nor had proposals been invited for the construc-
tion of the whole or any part of the proposed canal.   The
authority of the board of directors to act was a matter of
which the plaintiff was chargeable with notice.   In his
dealings with them he was required to act with reference
to the authority, limitations and  restrictions imposed
upon it by the legislation authorizing the organization
and providing for the government of the district.  *Forrest
v. St. Francis Levee District*, 77 Fed. Rep., 555, 561.   The
defendant is solely a creature of statute, organized for a
public purpose, to-wit, to furnish water for irrigation
purposes, to be usefully and beneficially applied to the
lands within the district.   It is, as is held in the case of
*Board of Directors v. Collins*, 46 Nebr., 411, a public rather
than a municipal corporation, and its agents are public
agents of the state.   Resort must be had to the statute
providing for the organization and government of an irri-
gation district to determine the power and scope of au-
thority of the board of directors to incur the liability
sought to be enforced in this action.   *Board of Directors v.
Collins, supra;* Dillon, Municipal Corporations [4th ed.],
sec. 25; *In re Bonds Madera Irrigation District*, 28 Pac. Rep.
[Cal.], 272; *Boehmer v. Big Rock Creek Irrigation District*,
48 Pac. Rep. [Cal.], 908.

It was evidently the intention of the legislature to re-
quire that, to authorize the incurrence of any indebted-
ness for construction work, there must first be created
a construction fund out of which the same may be satis-
fied.   This is made manifest by a consideration of the
sections heretofore referred to, and giving force and ef-
fect to the different provisions therein contained.   It is
first provided how a construction fund may be created.
Then it is provided how the contracts for work of con-
struction may be entered into.   It is further provided
that all expenses incurred in such construction  work
shall be wholly paid out of the construction fund; and,
lastly, it is declared with emphasis, and as mandatory,

in words that can not be misunderstood, that the board of directors or other officers of the district shall have no power to incur any liability whatever in excess of the provisions of the act, and that such indebtedness, if incurred, shall be and remain absolutely void. It was not, we think, the intention of the legislature that an indebtedness of this character could be incurred to be met at some indefinite time in the future, or to be satisfied from some other source than that expressly provided for in the act referred to. It was, we doubt not, the intention of the legislature that all steps necessary to, and required for, the creation of a construction fund should be first taken, after which indebtedness in the construction of the proposed work might be lawfully incurred to the extent of the fund so created. The sections referred to contemplate that, in respect to the construction of the proposed work, the business should be conducted on a cash and not on a credit basis, and the indebtedness arising thereby should be wholly met from the fund thus provided.

The right of recovery in this action, under the pleadings and evidence, must be based upon a satisfaction of the judgment obtained, wholly outside of, and contrary to, the express provisions of the act regarding the payment of an indebtedness incurred in the work of construction. The affirmance of the judgment establishes a legal and binding obligation, and implies compulsory satisfaction by some other method, and from another source, than that expressly provided by statute. If there be, as stated in the petition and stipulated facts, no construction fund provided, then it logically follows that no legal claim against the district can exist, and that such claim must be satisfied, if at all, contrary to the express provisions of the act.

In principle, the case falls within that announced in *McElhinney v. City of Superior*, 32 Nebr., 744, wherein it is held that "the city council of a city of the second class cannot incur any expense or enter into any contract on

behalf of the city unless an appropriation shall have been previously made concerning such expenditure, except in cases where the proposition has been sanctioned by a majority of the legal voters of the city." Says NORVAL, J., in the opinion of the court: "These sections were construed by this court in *City of Blair v. Lantry*, 21 Nebr., 247. We quote from the opinion: 'It will be seen that no contract can be made by the city council or any committee or any member thereof, or any expense incurred by any of the officers or departments of any corporation, whether such expense shall have been ordered by the city council or not, unless an appropriation shall have been previously made concerning such expense, except in certain cases where a further expenditure is sanctioned by a majority vote of the legal voters of the city.' This is the only reasonable construction that can be placed upon the language used by the legislature, and the decision will be followed."

The statute under consideration is in substance and in the main an adoption and re-enactment of the irrigation act of the state of California. The supreme court of that state, in construing their statute, in *Hughson v. Crane*, 47 Pac. Rep. [Cal.], 122, says: "The irrigation act is evidently framed upon the theory, and with the intention on the part of the legislature, that the affairs of the district shall be conducted upon a ready-money basis, and not upon credit; and, to enable the directors to carry out this purpose, provision is made for levying special assessments for the payment of salaries, wages, and expenses of management, and also for the sale of bonds by which to make the payments required upon the contracts for the construction of the works. This is clearly seen by the provision in section 16 [our 14], authorizing the board to sell the bonds 'from time to time in such quantities as may be necessary and most advantageous to raise money for the construction of said canals and works,' coupled with the provision in section 36 [our 23] that 'the board may draw from time to time from the cou-

struction fund, and deposit in the county treasury of the county where the office of the board is situated, any sum in excess of the sum of twenty-five thousand dollars,' and requiring the county treasurer to receive and be responsible for the disbursement of the same. The provision of section 15 [our 13], requiring the directors to estimate and determine the amount of 'money' necessary to be raised for the construction of the works, and to submit to the electors of the district the question whether bonds shall be issued 'in the amount so determined,' clearly implies that the estimate is to be of the 'amount of money' which may be received upon the sale of the bonds, at not less than 90 per cent [ours, 95 per cent] of their face value; that the cost of the works is to be estimated in money, and not in bonds, and is to be paid out of the construction fund created by the sale of the bonds. For the protection of the taxpayers, a limit is placed upon the rate at which the bonds may be sold,—90 per cent of their face value; and, as a special assessment can not be levied without their vote, they have control over the expenditures of the district. The wisdom of this provision is manifest, and is fully illustrated in the financial history of irrigation district bonds during the last few years,—a matter of which we can take judicial knowledge. If the construction of the works is to be paid for in money immediately upon their completion, or in installments as the work progresses, a contract for their construction can be obtained at a much less price than if payment is to be made in the obligations of the district whose value is constantly fluctuating." The views entertained in the opinion quoted from appear to us clearly to express the intention of the legislature, and while the authority is not binding upon us, because the decision was rendered subsequently to the enactment of the law by our legislature (*Myers v. McGavock*, 39 Nebr., 843), we, nevertheless, regard it as an authoritative interpretation of similar statute by the court of last resort of a sister state, worthy of citation in support of the interpretation placed by us on the statute in question.

Much of the argument of counsel on both sides is devoted to a discussion of the provisions of section 22, wherein it is provided that proposals for construction work shall be invited by published notice in a newspaper or newspapers, which shall describe the work to be done, and state that it will be let to the lowest responsible bidder, giving the time and place for the opening of the proposals.  It is further provided that the board of directors shall let the work in portions or as a whole to the lowest responsible bidder, or they may reject any and all bids, and readvertise for proposals, or may proceed to construct the work under their own superintendence with the labor of the residents of the district.  It is urged that, because, under the stipulated facts, authority was given to do the work under the superintendence of the directors before any proposals had been invited as provided in the section referred to, the board acted without authority, and a contract so entered into, as in the case of the plaintiff, would be void for want of such authority on the part of the directors.  We have not deemed an interpretation of this section as essential to a proper disposition of the case.  We are of the opinion, however, that it was the legislative intendment that sealed proposals should first be invited as in the section directed, and the bids thereunder accepted or rejected, before the directors would be authorized to enter into a contract for the construction of the work under their superintendence with the labor of the residents of the district.  The language of the section, if force is given to all of its different parts, will not permit of the construction as contended, that public notice asking for proposals for construction work need not be given, but the work may, in the first instance, and regardless of the question of notice asking for bids, be undertaken by the residents of the district under the superintendence of the directors.  It was, we think, the evident intention of the legislature that, by first advertising for bids, a basis might be laid for the determination of the question as to the proper cost of the

proposed work, after which it might be proceeded with, either under the bids received, or, after the bids are rejected, by the residents of the district in the manner indicated. The construction thus given would not, however, preclude a recovery by those who had performed the work for which the district had received the benefit, even though the contract under which it is done may be found to be illegal. Notwithstanding the illegal contract, if the indebtedness incurred was within the power and authority of the directors to contract, and the districts had received the benefits thereof, it would be liable for the reasonable value of the services rendered, not exceeding the contract price. *Lincoln Land Co. v. Village of Grant,* 57 Nebr., 70; *Grand Island Gas Co. v. West,* 28 Nebr., 852; *Nebraska City v. Gas Co.,* 9 Nebr., 339; *Clark v. Commissioners of Buffalo County,* 6 Nebr., 192. Under the other sections referred to, and in the absence of a construction fund, the directors were wholly without authority to incur any liability against the district for work of construction of the proposed canal, and their acts, with respect to the alleged contract under consideration, were *ultra vires,* and without force or binding effect as against the district. While the construction given may appear to work a hardship upon the plaintiff, yet, if a valid indebtedness of a few dollars or a few hundred dollars can be incurred in violation of the express provisions of the statute, there is no limit by which to confine the amount of indebtedness that may thus be created, thereby placing the property of the district at the mercy of incompetent or designing officers and agents, and setting at naught the will of the legislature.

It follows, from what has been said, that no cause of action is stated in the petition, and no recovery can be had thereunder or under the stipulation of facts. The judgment is

REVERSED.