JOHN F. NEAL ET AL. V. WILLIAM VANSICKLE ET AL.

FILED JUNE 9, 1904.   No. 13,592.

1. **Drainage: CONSTITUTIONAL LAW.** The drainage and reclamation of large tracts of swamp and overflowed or submerged lands is a matter of general public utility and concern, for which the legislature may provide by the creation of local administrative organizations or political corporations.

2. **Assessments** upon private property to defray the cost of local improvements are void if in excess of the benefits conferred, or if levied without notice to persons upon whose property they are imposed, or affording them an opportunity to be heard.

ERROR to the district court for Nemaha county: JOHN S. STULL, JUDGE. *Reversed.*

*Neal & Quackenbush,* for plaintiffs in error.

*Edgar Ferneau, contra.*

AMES, C.

In 1903 the legislature passed an act, chapter 116 of the laws, sections 1-19, article IV, chapter 89 of the Compiled Statutes (Annotated Statutes, 5561-5579), the purpose of which is expressed in its title as follows:

"An act to provide for the formation of drainage districts; for the reclamation and protection of swamp, overflowed, or submerged lands; to provide for the acquirement of rights of way, easements and franchises, or other property necessary to carry out the purposes of this act; to prescribe the course of procedure to be followed to accomplish such object; and to prescribe a penalty for the wilful and malicious injury or interference with the rights or property of said districts."

Pursuant to this act, thirteen persons owning contiguous tracts of land in Nemaha and Otoe counties, aggregating nearly 4,000 acres, joined in the execution of articles of association for the creation of a drainage dis-

trict including said lands and also a large number of other
tracts in said counties, the owners of which refused to
join in such association.  The articles thus adopted were
filed as the act prescribes and presented to the district
court for Nemaha county together with a prayer for an
order or judgment establishing the association as a public
corporation of the state in conformity to said act.  It is
not disputed that the entire procedure, including service
of process upon the nonconsenting landowners, was in
all respects such as is prescribed by sections 1 and 2 of the
act for obtaining the judgment prayed for.  Various ob-
jections were made by the persons refusing consent, but
all united in one contention, namely, that the act men-
tioned is unconstitutional and void, and solely in consid-
eration thereof the court dismissed the application.  The
moving parties bring the proceeding to this court by peti-
tion in error.

The record thus presents primarily and directly but
two questions, namely, whether the drainage of large
tracts, swamp and overflowed or submerged lands, is a
subject of such public and general interest that the legis-
lature may provide for it by general enactment, and, if
so, whether such provision may include the creation of
local political organizations to serve as agencies for the
accomplishment of the desired end.  If these questions are
answered in the affirmative, it must, we think, be conceded
that the method of creation or organization is a matter
purely and exclusively of legislative discretion with which
the courts have no power to intermeddle.  It will not be
contended that the courts have the right to dictate how
road districts or school districts or townships or coun-
ties shall be created or organized, nor with what admin-
istrative powers or functions they shall be endowed,
·d, obviously, what is true of them in this respect is true
of any other similar governmental agency that the leg-
islature may see fit to call  into being.  The creation
of such bodies is an  act of  sovereignty  and  the
consent  of  the  inhabitants, unless  expressly  re-

quired by constitutional enactment, has never been thought to be requisite. That the districts contemplated by the act are intended to be of a purely public and administrative character, is evident as well from the title as from the body of the law itself. Its officers are chosen by popular election and their powers, duties, compensation and terms of service are prescribed by the statute. The sources of its income are predetermined as are also the uses to which it may be applied, and the county treasurer is made the custodian of its funds, and his disbursement of them regulated as in case of other public moneys.

In our opinion, it is too late in the day to contend that the irrigation of arid lands, the straightening and improvement of watercourses, the building of levees and the drainage of swamp and overflowed lands for the improvement of the health and comfort of the community, and the reclamation of waste places and the promotion of agriculture, are not all and every of them subjects of general and public concern, the promotion and regulation of which are among the most important of governmental powers, duties and functions. Authorities to this effect are numerous, and of the highest character, and are so easily accessible that their recapitulation here would serve no useful purpose. They may be found collected in the opinion of the supreme court of Missouri in *Mound City Land & Stock Co. v. Miller,* 170 Mo. 240, 60 L. R. A. 190, and in an elaborate marginal note. We know of no recent authority to the contrary. The decision of this court in *Jenal v. Green Island Draining Co.,* 12 Neb. 163, much relied upon by defendants in error, is not in conflict herewith. In that case, the body seeking to exercise the powers of eminent domain and of assessment and taxation, was a private corporation having officers and functionaries of its own choosing, governed by rules and regulations of its own devising, and enjoying the free disposition of its income. Such an organization is as unlike that now under discussion as can well be conceived of.

The foregoing conclusion, if sound, suffices for the disposition of the present proceeding, because nothing is here involved but the question of the validity of an organization created in the manner prescribed by the act of 1903, and the decision of that question does not preclude a future inquiry into the validity of the powers conferred, or sought to be conferred upon it, or the legality of the methods prescribed or that shall be adopted for their exercise. A municipal corporation would not cease to exist because its charter attempted to confer upon it powers of assessment or taxation, or of eminent domain or of police regulation in violation of the constitution, but its defects and insufficiencies in these respects would be supplied and remedied by subsequent legislation, and the same would be true, under like circumstances, of a drainage district. But, inasmuch as objection is made to the 12th and 14th sections of the act, and inasmuch as these sections prescribe the sole means by which the organization may obtain funds for the prosecution of its purposes, so that, if they were void, it would remain inanimate until vitalized by new legislation, it is important that they receive present consideration. Of these sections the following are copies:

"Sec. 12. As soon as said drainage district shall have been organized as aforesaid, and in order to defray the expenses for said topographical survey, the condemnation of any right of way, easement or franchise and constructing any ditch, drain, dyke or other works, maintain the same, and to pay such officers, servants and employees as are allowed compensation by law, the said board of supervisors may order the assessment of a tax, not exceeding fifty cents on each acre of land situate in said district to be benefited, Provided, that in apportioning the tax or assessment to be borne by each separate tract of land, due regard shall be had to the amount of benefit expected to accrue, proportionately, to such separate tract and shall be determined in the first instance by the drain commissioner and shall be equalized and approved by

the board of supervisors and not excluded by court, for each and every year, and until no further expenditure of money in that behalf shall be necessary; and whenever the said board of supervisors shall have, by resolution, ordered the assessment of a tax, the secretary of the board, under the seal of the district, shall cause a certified copy of said order describing each piece or parcel of land, right of way, road or property so benefited to be transmitted to the clerk of the county in which said drainage district shall be situated, and in case said drainage district shall be situated in two or more counties, then to the clerk of each county in which any portion of said district may be situate; and the said tax shall be extended on the tax book of the county on the real estate to be benefited, situated in said district, in the same manner that other taxes are now extended, in a column under the heading of 'drainage tax,' and shall be collected by the treasurer of the county in which the real estate is situated on which the tax is levied."

"Sec. 14. The board of supervisors of any such district may, with the consent of the owners of not less than two-thirds of the whole number of acres in said district, given at an election held for that purpose at a time and place in said district to be fixed by such board, and upon notice for the same length of time and under an organization of the meeting the same as provided in case of the election of supervisors, borrow and issue bonds therefor upon the credit of said district, any sum not exceeding six dollars per acre upon all lands in said district, to be used in paying for right of way and in constructing the drainage works authorized in this act; such bonds shall bear not exceeding six per cent. per annum, and shall not be sold for less than par. Upon negotiating any such loan, it shall be the duty of the board of supervisors to assess upon said district not exceeding fifty cents per acre in any one year, for the purpose of producing a sinking fund with which to pay the interest and principal of said bonds as it matures; and no such bonds shall be made to run for more than twenty years."

Objection is made to section 12, because it does not prescribe notice to the landowners of the making of the assessment or of the time and place of its equalization by the board of supervisors. We think that the weight of reason and authority is that an assessment on account of local improvements which is required to be levied in proportion to benefits, is void if the property owner is not notified or afforded an opportunity to be heard. *Stuart v. Palmer*, 74 N. Y. 183; *Thomas v. Gain*, 35 Mich. 155, 24 Am. Rep. 535; 2 Cooley, Taxation (2d ed.), 653-655.

But it does not follow that the section in question is void. The board by whom the assessment is to be equalized and levied, is an elective deliberative body, to which is committed general supervision of the affairs of the district. It necessarily has implied power to prescribe rules and regulations for its own conduct and the transaction of business in its charge, in conformity to whatever rules and principles of law are applicable thereto, including provisions for notice of the time and place of their sittings as a board of equalization and the manner in which interested persons shall be afforded an opportunity to be heard. The fact that the assessment is to be made in anticipation of benefits to be dervied from a definitely described public work, thereafter to be constructed, is not in our opinion fatal, although the legislative wisdom of such a policy may be doubted.

There is more serious objection to section 14. It must be regarded as the settled law of this state that assessments to defray the cost of local improvements must not exceed the value of the benefits conferred upon the property affected. *Hanscom v. City of Omaha*, 11 Neb. 37; *Smith v. City of Omaha*, 49 Neb. 883; *Cain v. City of Omaha*, 42 Neb. 120.

The district has no power of general taxation and no means of acquiring revenues except from assessments of this character. This section purports to empower it to incur a debt equal to six dollars upon every acre of land

within its limits. It may well happen that none of the land will be benefited to exceed that sum or even by so much, and that the greater part or all of it may be benefited very much less. In order to meet its obligations in such a case it would be indispensable that some or all of the land should be taxed in excess of the limitation prescribed in the foregoing decisions. In view of this fact, the section evidently contemplates what counsel calls a "level assessment" of fifty cents an acre annually on all the lands in the district, without apportionment with respect to benefits, for the purpose of paying the principal and interest of the proposed bonds. Both such obligations and such a tax would be in excess of the powers which the legislature may constitutionally grant to the district and would be void, and we are of the opinion, therefore, that this section of the statute is also void. Besides this, the scheme proposed is an indirect method of farming out or selling the public revenues in anticipation of their collection, a practice that has been productive of intolerable evils whenever and wherever adopted. But section 14 is not an indispensable or essential feature of the act, and it may be stricken out without defeating its principal objects or seriously impairing the efficiency of the organization. Its elimination will, at most, delay somewhat the active prosecution of the intended improvements and the legislature may be applied to for additional powers if they shall be thought to be needed.

It is recommended that the judgment of the district court be reversed and the cause remanded for further proceedings.

LETTON and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and the cause remanded for further proceedings.

REVERSED.