PLATTE VALLEY PUBLIC POWER AND IRRIGATION DISTRICT, APPELLANT, V. COUNTY OF LINCOLN ET AL., APPELLEES.

14 N. W. 2d 202

FILED APRIL 11, 1944.　No. 31554.

M. E. Crosby, M. M. Maupin, R. H. Beatty, R. O. Canaday, P. E. Boslaugh and August Wagner, for appellant.

James G. McIntosh, Walter R. Johnson, Attorney General, Carl H. Peterson and Edwin Vail, contra.

Neighbors & Danielson, Dana VanDusen, C. A. Sorensen, Samuel O. Clark, Jr., Sewall Key, Paul Freund, Bernard Chertcoff, Edward First, Alan Johnstone, C. Russell Shetterly and Alvin J. Rockwell, amici curiæ.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

WENKE, J.

The action was brought by the Platte Valley Public Power and Irrigation District, as plaintiff and appellant herein, in the district court for Lincoln county, against the county of Lincoln and the members of its board of county commissioners, its county clerk, its county treasurer, and its county sheriff, defendants and appellees herein, to enjoin the levy and enforcement of a distress warrant issued for the purpose of collecting personal taxes levied and assessed against

its property and which taxes it claims were illegally and unlawfully assessed. From an order finding generally for the defendants and dismissing its petition, the plaintiff has appealed.

By stipulation of the parties, the appellant being referred to herein as the district and the appellees as the county, it is agreed that the district is a public corporation organized under and by virtue of Senate File No. 310, as now amended, being section 70-701 to section 70-719, inclusive, Comp. St. Supp. 1941; that the district is engaged in the operation, management and maintenance of a system of diversion works, inlet and outlet canals, reservoirs, powerhouse, transmission lines, and other necessary works and equipment for the diversion and storage of waters from the North Platte River and the release of said stored waters for the purpose of the generation of electric current and the transmission and sale thereof for commercial purposes, and the sale, transportation, and delivery of said released waters for irrigation purposes; that the district in the years 1939 and 1940 owned certain automobiles and trucks which were necessary and being used by it in the operation of its irrigation and power system, upon which the county, by its proper officers, levied and assessed state, county, city and school district taxes for the year 1939 in the total sum of $159.38 for which there was issued and delivered to the sheriff of said county a distress warrant upon which the sheriff made demand of the district for payment. The question presented by this appeal is whether or not the property of the district is, under the Constitution and statutes of the state, subject to taxation.

Two questions are presented by this appeal. The first is whether or not the district's property is exempt from taxation under the provisions of section 2, art. VIII of the Constitution, as amended in 1920, which is in part as follows: "The property of the state and its governmental subdivisions shall be exempt from taxation" because the district is a governmental subdivision of the state; and second, whether the property owned by the district is held by it in trust

for the state, the state, in fact, being the real owner thereof.

The question of whether or not the district in the use of its property used the same in a private or public capacity, often referred to as in a proprietary or governmental use, is not material here. Under section 2, art. IX of the Constitution of 1875, which was in force until the adoption of the amendment thereto in 1920, the provision with reference to tax exemption was in part as follows: "The property of the state, counties, and municipal corporations, both real and personal shall be exempt from taxation * * * ." Under this section in the case of *City of Omaha v. Douglas County*, 96 Neb. 865, 148 N. W. 938, we held ownership to be the sole basis of tax exemption. Quoting from the foregoing opinion: "Under the Constitution of this state rightful ownership of property by a municipal corporation such as the city of Omaha is all that is required or necessary to extend to such property complete exemption and immunity from assessment and taxation, whether located within the city or without." Under the provisions of section 2, art. VIII of the Constitution, as amended in 1920, which reads in part as follows: "The property of the state and its governmental subdivisions shall be exempt from taxation" and section 77-202, Comp. St. 1929, which reads in part the same, *ownership* and not *use* of the property is the basis of exemption. While the logic of requiring public agencies engaging in functions of a private nature for a public purpose to pay taxes the same as private persons and corporations engaged therein may appeal to many, however, until the people of the state change the Constitution to make the use thereof rather than the ownership the basis of exemption we must follow the language of the Constitution, for as stated in *Elmen v. State Board of Equalization and Assessment*, 120 Neb. 141, 231 N. W. 772: "The words and terms of a constitutional provision are to be interpreted and understood in their most natural and obvious meaning, unless the subject indicates or the text suggests that they have been used in a technical sense, and while the Constitution, as amended, must be construed as a whole, still where the words em-

ployed in a constitutional provision are plain, direct, and unambiguous, no interpretation is necessary to ascertain their meaning, for courts may not supply what they deem unwise omissions, or add words which substantially add to or take from the Constitution as framed."

Cases are cited from this jurisdiction involving the question of tort liability, *Henry v. City of Lincoln,* 93 Neb. 331, 140 N. W. 664; *Cook v. City of Beatrice,* 114 Neb. 305, 207 N. W. 518; of immunity from suit, *Crete Mills v. Nebraska State Board of Agriculture,* 132 Neb. 244, 271 N. W. 684; of liability for goods purchased, *Sorensen v. Chimney Rock Public Power District,* 138 Neb. 350, 293 N. W. 121; and the sale of appliances, *Nelson-Johnston & Doudna v. Metropolitan Utilities District,* 137 Neb. 871, 291 N. W. 558, wherein the general rule is announced as stated in *Sorensen v. Chimney Rock Public Power District, supra*: " * * * that, when a state, by itself or through its corporate creations, embarks in an enterprise, especially when commercial in character or which is usually carried on by individuals or private companies, its sovereign character is ordinarily waived, and it is subject to like regulations with persons engaged in the same calling." These cases do not involve the question of tax exemption nor are they applicable thereto. This rule applies generally to municipalities as well as to public corporations created by the state to carry on functions for a public purpose and if applied to the matter of tax exemption would create a different basis for tax exemption than provided in our Constitution and as stated in *Elmen v. State Board of Equalization and Assessment, supra*: "Courts may not supply what they deem unwise omissions, nor add words which substantially add to or take from the Constitution as framed." Nor do these corporations thereby lose the character of their corporate entity, for as stated in 1 McQuillin, Municipal Corporations (Rev. 2d ed.) 314: "And though a municipal corporation, in supplying public utilities, as water, light, power and heat, and acting generally as a private corporation, and competing with private corporations and individuals for gain and

profit, is regarded as a private corporation as relates to its liability for its torts and the torts of its servants, it never loses its character as a public corporation." And as stated in *City of Pasadena v. Railroad Commission,* 183 Cal. 526, 192 Pac. 25, 10 A. L. R. 1425: "It is not true that a city is a private corporation when carrying on a municipally owned public utility. No decision so holds. All the decisions on the subject recognize the fact that a city does not change its character by engaging in such enterprises. * * * The distinction does not go to its character as a corporation, but to its liabilities in exercising one class of its powers, as compared to its liabilities in the exercise of its functions as a local governmental agency."

While many jurisdictions, including those cited by the county, base the tax exemption of property owned by the public upon its use as being either private or public, often referred to as proprietary or governmental, however, these decisions are generally based upon the provisions in their Constitutions or statutes, or both, making this classification. But until the people of this state change the basis of tax exemption of property owned by the state or its governmental subdivisions from that of ownership to one of use, we are not authorized or empowered to do so.

A public purpose has for its objective the promotion of the public health, safety, morals, security, prosperity, contentment, and the general welfare of all the inhabitants. That the purpose for which the district has been created, being for irrigation and the development of power for the generation of electricity and its transmission, distribution and sale, is for a public purpose has already been determined by this court and is without question. *Neal v. Vansickle,* 72 Neb. 105, 100 N. W. 200; *Elliott v. Wille,* 112 Neb. 86, 200 N. W. 347; *State ex rel. Loseke v. Fricke,* 126 Neb. 736, 254 N. W. 409. As stated in *State ex rel. Loseke v. Fricke, supra*: "Generally speaking, it relates to the preservation and utilization, for the public welfare, of one of the natural resources of the state, to wit, the waters of its streams and rivers. This is a broad subject and includes

all practical uses and benefits of which such waters are susceptible, not only for irrigation, but canals for transportation, dams for power and production of electricity for purposes of light and power." And with reference to irrigation it is held in *Neal v. Vansickle, supra,* that the promotion and regulation thereof is among the most important of governmental powers, duties and functions.

For many years the proper taxing authorities did not levy or attempt to levy taxes upon the property of irrigation districts or other property owned by the public for a public purpose, either private or public, and this was true when the Constitutional Convention met and the amendments were drafted and adopted in 1920. At this convention, and in the amendments submitted and adopted, the provisions of the Constitution of 1875 as to section 2, art. IX, which read in part as follows: "The property of the state, *counties,* and *municipal corporations,* both real and personal shall be exempt from taxation * * * " were not limited, but, as shown by the records of the convention and from the language used, were broadened to read, section 2, art. VIII of the Constitution, as amended in 1920: "The property of the state and its *governmental subdivisions* shall be exempt from taxation." (Italics ours.) Therefore, in construing this section of the Constitution we should not overlook the following rules as announced in *Laub v. Furnas County,* 104 Neb. 402, 177 N. W. 749: "Long-continued practical construction of a statute by the officers charged by law with its enforcement is entitled to considerable weight in interpreting that law." And in *Elmen v. State Board of Equalization and Assessment, supra*: "Legislative construction of a constitutional provision, although not necessarily conclusive upon the judicial department, is entitled to great weight when deliberately given, and especially when adhered to consistently for a considerable period of time, and this is particularly true when an identical construction has also been placed thereon for a like period of time by the highest officers of the executive department of the government and by the administrative officers who may be affected thereby."

We have held with reference to irrigation districts that, "Irrigation districts organized under our laws are public, rather than municipal corporations, and their officers are public agents of the state. * * * 'they are but mere agencies of the state in local government, without any powers except such as the legislature may confer upon them, and are at all times subject to a revocation of such power, * * * .'" *Board of Directors of Alfalfa Irrigation District v. Collins,* 46 Neb. 411, 64 N. W.,1086. And in *Lincoln & Dawson County Irrigation District v. McNeal,* 60 Neb. 613, 83 N. W. 847, we held: "The defendant is solely a creature of statute, organized for a public purpose, to wit, to furnish water for irrigation purposes, to be usefully and beneficially applied to the lands within the district. It is, as is held in the case of *Board of Directors v. Collins,* 46 Neb. 411, a public rather than a municipal corporation, and its agents are public agents of the state." And as stated in *Elliott v. Calamus. Irrigation District,* 120 Neb. 714, 235 N. W. 95: "An irrigation district is a public corporation and the powers of its officers and directors are limited by the terms of the statute under which the district was created." We can see no difference between these irrigation districts and the appellant power and irrigation district and what has been said in regard to the irrigation districts is true of the appellant power and irrigation district.

In a similar situation in the case of *Lennox v. Housing Authority of City of Omaha,* 137 Neb. 582, 290 N. W. 451, wherein the Housing Authority of the City of Omaha, created by an ordinance of the city but which authority was separate from the city and whose functions were for a public purpose, we held: "Public funds of the city may, with legislative sanction, be used to aid in the establishment of a housing authority, it being a *governmental subdivision* organized for a public purpose." And further: "We are obliged to hold that a housing authority, created and operated under the legislation before us, is a *governmental subdivision* within the *purview of the Constitution,* and consequently its property and bonds are legally exempted from taxation." (Italics ours.)

From the reasoning of these cases it must follow that a public corporation, authorized by the legislature and organized pursuant thereto to carry out functions that have been determined to be for a public purpose and the general welfare of the people, is an arm or branch of the government for this purpose and under the plenary control of the legislature and therefore a governmental subdivision of the state within the terms of section 2, art. VIII of the Constitution, as amended in 1920. However, there is a particular reason why the appellant district is a governmental subdivision. The state of Nebraska is primarily agricultural and much of its lands can be benefited by irrigation and its principal source of power is the water of its natural streams. The framers of our Constitution, in order to leave no question or doubt that the use of the water of our natural streams for the purpose of irrigation and the development of power was for a public purpose and a matter that affected the general welfare of the people of the state, provided in section 5, art. XV of the Constitution: "The use of the water of every natural stream within the State of Nebraska is hereby *dedicated to the people of the state for beneficial purposes,* subject to the provisions of the following section." And in section 4, art. XV: "The necessity of water for domestic use and for *irrigation* purposes in the State of Nebraska is hereby *declared to be a natural want.*" And in section 7, art. XV: "The use of the waters of the state for *power purposes* shall be deemed a *public use* and shall never be alienated, but may be leased or *otherwise developed as by law prescribed.*" (Italics ours.)

When the state, through its legislature, provides by statutory enactment the manner in which districts, such as the appellant, may be organized and operated for the purpose of using the waters of our natural streams for irrigation and the development of power for public use and such district is formed and part of the state's waters dedicated to its use for such public purposes, then the district is in fact a governmental subdivision under our Constitution. Therefore, all the district's property, both real and personal, is exempt from taxation.

In view of the foregoing it is not necessary to determine whether the property owned by the district is held 'by it in trust for the state.

For the reasons stated, the judgment of the lower court is reversed with directions to enter judgment for the district permanently enjoining the county and all of its officers from enforcing the distress warrant.

REVERSED.

SIMMONS, C. J., concurring.

The question here presented is whether or not personal property of the plaintiff used in the conduct of its business is exempt from taxation.

Several applicable sections in article XV of the Constitution answer that question. "The necessity of water for domestic use and for irrigation purposes in the State of Nebraska is hereby declared to be a natural want." Sec. 4. "The use of the water of every natural stream within the State of Nebraska is hereby dedicated to the people of the state for beneficial purposes, subject to the provisions of the following section." Sec. 5. "The right to divert unappropriated waters of every natural stream for beneficial use shall never be denied except when such denial is demanded by the public interest. Priority of appropriation shall give the better right as between those using the water for the same purpose, but when the waters of any natural stream are not sufficient for the use of all those desiring to use the same, those using the water for domestic purposes shall have preference over those claiming it for any other purpose, and those using the water for agricultural purposes shall have the preference over those using the same for manufacturing purposes. Provided, no inferior right to the use of the waters of this state shall be acquired by a superior right without just compensation therefor to the inferior user." Sec. 6. "The use of the waters of the state for power purposes shall be deemed a public use and shall never be alienated, but may be leased or otherwise developed as by law prescribed." Sec. 7.

Sections 4, 5 and 6 were, in their principal provisions, a

part of the statutory law of this state beginning in 1895. Laws 1895, ch. 69, secs. 65, 42, 43. These provisions continued to be the statutory law of this state. See Rev. St. 1913, secs. 3369, 3370, 3372. They were reenacted as a part of the Civil Administrative Code in 1919. See Laws 1919, pp. 831, 832. They now appear as sections 46-501, 46-502 and 46-504, Comp. St. 1929.

It is a sound rule of constitutional construction that where the inquiry is directed to determining the purpose sought to be accomplished by a particular provision, resort may be had to the proceedings of the convention which framed the language, and where the proceedings clearly point out the purpose of a provision, the aid will be valuable and satisfactory. 1 Cooley, Constitutional Limitations (8th ed.) 142; 12 C. J. 711; 16 C. J. S. 69.

It is clear from a reading of the debates of the constitutional convention that it was the purpose of the framers of these constitutional provisions (secs. 4, 5, 6, *supra*) to make the use of the waters a paramount concern of the state and to place these legislative provisions, so far as incorporated in the Constitution, beyond the power of the legislature to change. (See the debates on Proposal 129, Proceedings of the Constitutional Convention, 1919-1920.) The convention, in an "official statement" issued to the people so that they might "have full information of the nature and purpose of the proposed amendments," gave the following "explanatory" statement: "The purpose of these new provisions in the Constitution is to define the use of water and place the same under constitutional protection, to which, owing to its importance in the development of the agricultural interests of the state, it is entitled." (Proposed Amendments to the Constitution of the State of Nebraska as adopted by the Constitutional Convention 1919-1920, p. 37.)

The constitutional convention also submitted a provision which was adopted and became section 7, *supra,* regarding the use of the waters of the state for power purposes and providing that such use "shall be deemed a public use and

shall never be alienated, but may be leased or otherwise developed as by law prescribed." This provision originated as Proposal 282 of the convention. It was thoroughly debated. The debates clearly demonstrate that it was the purpose of the provision to make certain that the water-power resources of the state should be and remain for all time the property of the state and its people, and that those resources could be developed for their benefit. It is further clear that the framers of the provision contemplated that it would authorize the development of the state's water-power resources by the state through the direct appropriation of public funds, through districts or other agencies created by the legislature for that purpose, or through private corporations or individuals, "as by law prescribed." (See debates on Proposal 282, Proceedings of the Constitutional Convention 1919-1920.) The official statement explaining the provision referred to the possible development of power "in this state through the use of the water in our streams. To conserve this for the use of the people is the object of this provision." See Proposed Amendments to the Constitution of the State of Nebraska as adopted by the Constitutional Convention 1919-1920, p. 38.

These constitutional provisions express the will of the people and are the basic law in this state. By adopting these provisions, the people, through the Constitution, have made certain uses of the waters of this state the fundamental law of this state, untouchable by the legislature, and binding upon the courts.

By section 7, *supra*, the people have provided that the development of the waters of the state for power purposes may be provided for by law as a public use, a use never to be alienated. The power to provide for that development has been placed in the legislature. It, from its very nature, is a governmental power, made so by inclusion in the Constitution of the state as one of the purposes and functions of the state, which the legislature is authorized to make effective. On this basis, I am of the opinion that a district, created under the legislative act here considered to develop

the use of water for power purposes, is one created to serve a constitutionally declared purpose of government, and as such is a governmental agency.

It may be advanced that section 7, *supra,* authorizes the development of the use of the waters for power purposes and does not include the creation of agencies of the state for the development for irrigation uses, and that this plaintiff is engaged in both power and irrigation development. However, that beneficial use is recognized by section 6, *supra.* It has long been the experience in this state, and in other states, and was so stated in the debates of the constitutional convention, that water may be more advantageously used where one agency combines both water-power and irrigation development in one system of works. It is in full accord with the purposes of this provision to hold that development of the use for irrigation may be included in the development of the use for power purposes, and as a necessary part of that full development for which the legislature is authorized to provide. Mr. Abbott, the member of the convention who proposed this amendment, in discussing section 7 in connection with sections 4, 5 and 6, said: "One supplements the other, and both together constitute a complete scheme for the utilization of water of this state * * * ." (Proceedings of the Constitutional Convention 1919-1920, p. 1810.)

The same convention that submitted to the people of this state for adoption the constitutional provisions above quoted, also submitted the proposal which became a part of section 2, art. VIII that "The property of the state and its governmental subdivisions shall be exempt from taxation." The debates do not indicate that the framers of these provisions considered the immediate problem here presented. The language used is broad enough, and must necessarily be held, to include these state agencies created to develop the waters of the state for power purposes. They, being governmental agencies carrying out governmental purposes, are in my opinion governmental subdivisions, and their property exempt from taxation under the provisions of section 2, *supra.*

If the majority opinion is to be construed, as I think it should be, so as to base the decision upon the constitutional provisions here discussed, then I am in accord with that decision.

My disagreement with the majority goes to statements made in the opinion other than the determination that the plaintiff is a governmental subdivision under the constitutional provisions which I have discussed.

Particularly, I disagree with the inference, that may follow from the discussion, that a public corporation organized for a public purpose is *ipso facto* a governmental subdivision of the state. The majority do not undertake to define a "governmental subdivision." There is a vast difference between corporations, described either by the legislature or the courts as "public corporations," and "governmental subdivisions." The term "public corporation" is a general, all-inclusive term, applied loosely by courts and legislatures to all corporations that are not private corporations. A governmental subdivision is one created for the purpose of aiding in the administration of the law, and through which the state exercises some of its governmental functions and powers by a delegation of a part of its sovereignty. Not all subdivisions of the state are exempt from taxation under section 2, *supra*. It is only those that are "governmental" in character. A "governmental subdivision" falls within a far more restricted classification than a "public corporation." This distinction has been heretofore recognized by this court in *State ex rel. Metropolitan Utilities District v. City of Omaha*, 112 Neb. 694, 200 N. W. 871. See, also, 43 C. J. 69, 70, 182, 183; 1 Fletcher, Corporations (Perm. ed.) 207; 6 McQuillin, Municipal Corporations (Rev. 2d ed.) 1057; *Griffith v. City of Butte*, 72 Mont. 552, 234 Pac. 829; *City of High Point v. Duke Power Co.*, 120 Fed. 2d 866; *Vilas v. City of Manila*, 220 U. S. 345, 31 S. Ct. 416.

If the majority opinion is to be so construed, and it should not be, as to exempt all corporations as "governmental subdivisions" which either the legislature or this court has heretofore or may hereafter label public corporations, or

agencies created for a public purpose, the restrictive provision in section 2 of "governmental subdivisions" will be broadened far beyond any intent of the framers of our Constitution, and that provision will become a wide avenue of escape from taxation—a result that the framers intended should not follow. The late President Theodore Roosevelt is quoted as having written: "Judicial amendment of the Constitution is fatally easy." If the construction just discussed should follow from this decision, then it would be the result of a judicial amendment of the Constitution, which this court has neither the right nor the power to do.

The majority state that they can see no difference between irrigation districts organized under the act of 1895 and the plaintiff district, and argue that, because irrigation districts have not been taxed, the plaintiff district's property is not taxable. Whether or not irrigation districts are or are not taxable is not an issue in this case. Using language taken from the *McNeal* opinion cited by the majority, 60 Neb. 613, 83 N. W. 847: "Resort must be had to the statute providing for the organization and government of an irrigation district to determine the power and scope of authority" of the district. The majority do not resort to the statute to determine that difference. The two districts are organized under different statutory provisions with distinctly different grants of power. One marked difference is the power of taxation which was given to the irrigation districts. See Laws 1895, ch. 70, sec. 15. That power is denied the plaintiff district. See Comp. St. Supp. 1941, sec. 70-708. This court in *Fontenelle Forest Assn. v. Sarpy County*, 118 Neb. 725, 226 N. W. 327, has indicated the answer to that contention and that is, for the state to authorize the taxation of irrigation districts would "involve other taxation for the payment of the taxes so laid" and for that reason the inference is that the legislature did not intend to require an agency having the power of taxation to levy taxes to pay taxes.

Finally, the majority discuss and appear to rely upon two statements in *Lennox v. Housing Authority of City of Oma-*

*ha,* 137 Neb. 582, 290 N. W. 451. In that case the proposition that the Housing Authority was a governmental subdivision was not seriously controverted. It was a fact largely assumed to be true by the parties in presenting the issues. The *Housing Authority* case construed a statute passed in the exercise of the *police power* of the state. The opinion so states. Furthermore, the legislature there declared the housing projects to be governmental functions, and their property exempt from taxation. Laws 1937, ch. 93, sec. 1. No such legislative finding or declaration is found in Senate File 310 under which plaintiff is organized. The decision in the *Lennox* case is not in point here unless it is first assumed that the plaintiff district was created by the legislature under the authority of the police power of the state. That contention is not advanced by the majority, is at best a debatable premise when applied to the plaintiff district, and is impliedly denied when the majority place the holding upon the foundation of the constitutional provisions herein first discussed.

For the reasons herein expressed, I concur in the result reached by the majority that the plaintiff's property, which the defendant seeks to tax, is exempt from taxation.

YEAGER, J., concurring in the result.

I am convinced that the majority opinion announces a correct decision of the question of whether or not the plaintiff district is exempt from taxation but I think that since, as pointed out by the opinion, a constitutional ground exists for holding that a public power district organized pursuant to statute to engage in the production and distribution of electric current and in irrigation is exempt from taxation, that the decision and the ground therefor should be so limited.

To go beyond that is not only unnecessary but, as I see the situation, goes too far toward determination of the matter of taxation of property of other and different corporations organized under and authorized by Senate File No. 310 for the performance of purposes not contemplated by the constitutional provisions mentioned in the opinion.

It is my view that this court ought not, directly or indirectly, in the opinion in this case, to go beyond a determination of the question of whether or not a corporation organized under Senate File No. 310 for the purpose of performing the functions contemplated by the cited provisions of the Constitution is exempt from taxation.