REQUESTED BY: Senator Don Wesely Nebraska State Legislature
You have requested our opinion regarding the constitutionality of proposed legislation which would establish a category of airports called privately-owned public use airports. LB 609 would also authorize the Department of Aeronautics to assist in the acquisition, development, operation, and maintenance of airports, including privately-owned public use airports, out of appropriations made by the Legislature as well as federal and other monies.
Your specific question is whether the provisions of LB 609 would violate Article XIII, § 3 of the Nebraska Constitution which prohibits extending the credit of the state to any private individual, association, or corporation. Closely related to the prohibition against the giving or lending of the state's credit, but not part of Article XIII, § 3, is the principle of law that public funds cannot be expended for private purposes. Our conclusion is that the use of state funds in the acquisition, development, operation, or maintenance of privately-owned public use airports would not violate the constitutional prohibition against lending the credit of the state, but may be challenged as an expenditure of state funds for private purposes. Nonstate funds, including various federal grants which the state receives for specific purposes, would not be subject to the restrictions of Article XIII, § 3. We note that LB 609 concerns the expenditure of both state and nonstate funds.
I. Review of Current Statutes and LB 609
We will first review the statutes which would be affected by LB 609 and the amendments which are proposed. As you point out in your letter, LB 609 would create a new category of airports called "privately-owned public use airports." These are defined at LB 609, § 1, as those airports "owned by a person which is primarily engaged in the business of providing necessary services and facilities for the operation of civil aircraft and which (a) has at least one paved runway, (b) is engaged in the retail sale of aviation gasoline or aviation jet fuel, and (c) possesses facilities for the sheltering, servicing, or repair of aircraft." The term "civil aircraft" is currently defined as "any aircraft other than a public aircraft" while "public aircraft" is an aircraft used exclusively by a government or political subdivision. Neb. Rev. Stat. § 3-101 (4) and (5) (Cum. Supp. 1994).
Neb. Rev. Stat. § 3-113 (1991) currently authorizes the Department of Aeronautics to offer engineering and other technical services, without charge, to any municipality in connection with the construction, maintenance, or operation of an airport. LB 609 would amend this provision so as to authorize the Department to also offer such services to any person owning a private-owned public use airport. Neb. Rev. Stat. § 3-119
(1991) provides that the Department "may render assistance in the acquisition, development, operation, or maintenance of airports" owned or operated by municipalities, out of appropriations made by the Legislature for that purpose. LB 609 proposes to also authorize the Department to render assistance out of legislative appropriations with regard to privately-owned public use airports.
The proposed amendments to Neb. Rev. Stat. §§ 3-124 and3-125 would authorize the Department to accept federal and other money, subject to federal statutes and regulations, for and on behalf of any person owning a privately-owned public use airport as well as on behalf of the state or any municipality, for the acquisition, construction, improvement, maintenance, and operation of airports and other air navigation facilities. The Department would be authorized to act as the agent of a private owner in accepting such money and in contracting for the acquisition, construction, improvement, maintenance, or operation of airports financed either in whole or in part by federal money. Further, Neb. Rev. Stat. § 3-126 would be amended to provide that all money received by the Department pursuant to Neb. Rev. Stat. §§ 3-101 to 3-156 shall be remitted to the State Treasurer for credit to the Department of Aeronautics Cash Fund, to be disbursed by the Department whether acting for the state or as the agent of a municipality or private owner.
Finally, Neb. Rev. Stat. § 3-147, as amended, would read as follows:
 The acquisition of any lands for the purpose of establishing airports or other air navigation facilities; the acquisition of any airport protection privileges; the acquisition, establishment, construction, enlargement, improvement, maintenance, equipment, and operation of airports and other air navigation facilities, whether by the state separately or jointly with any municipality, municipalities, or any person owning a privately-owned public use airport; the assistance of the state in any such acquisition, establishment, construction, enlargement, improvement, maintenance, equipment, and operation; and the exercise of any other powers herein granted to the department or hereby declared to be public and governmental functions, exercised for a public purpose, and matters of public necessity. Such lands and other property and privileges acquired and used by the state in the manner and for the purposes enumerated in the State Aeronautics Department Act shall be and are hereby declared to be acquired and used for public and governmental purposes and as a matter of public necessity.
 II. Article XIII, § 3 of the Nebraska Constitution
The Nebraska Constitution prohibits the unlawful pledge of the credit of the state: "The credit of the State shall never be given or loaned in aid of any individual, association, or corporation. . . ." Neb. Const. Art. XIII, § 3. You ask whether the proposed amendments set forth in LB 609 violate this constitutional provision. The case of Haman v. Marsh, 237 Neb. 699,467 N.W.2d 836 (1991), is a recent Nebraska Supreme Court decision which interprets Article XIII, § 3 of the Nebraska Constitution. At issue in Haman was legislation which appropriated state tax money to compensate depositors who had suffered losses due to the failure of industrial loan and investment companies in Nebraska. The Nebraska Supreme Court set out a three-prong test, and stated that to establish a law was unconstitutional under Article XIII, § 3, a plaintiff had to prove each of the following elements: (1) The credit of the state (2) was given or loaned; (3) in aid of any individual, association, or corporation. Haman, 237 Neb. at 719.
"Closely related to the prohibition against the giving or lending of the state's credit . . . is the principle of law that public funds cannot be expended for private purposes." Haman,237 Neb. at 721-722. While this "public purpose" doctrine is not part of Article XIII, § 3 of the Nebraska Constitution and not strictly part of your inquiry, we will analyze LB 609 under both Article XIII, § 3 and the "public purpose" doctrine.
We first note that LB 609 and the statutes which it amends concern the expenditure of both state and nonstate funds. Our office has previously discussed the distinction between state and nonstate funds and the applicability of Article XIII, § 3 to such funds in Op. Att'y Gen. Nos. 87001 and 87114. These particular opinions dealt with the receipt and use of monies received as a result of court awards in various energy overcharge cases. We found that state funds are those monies which are generated by state fees or state taxes whereas nonstate funds are those which the state receives from outside sources. We gave as an example of nonstate funds the various federal grants which the state receives for specific purposes or to carry out the goals of certain designated federal programs. We further noted that the weight of authority from other jurisdictions indicates that the fact that the monies are deposited within a state treasury does not in itself make them state funds, citing Application of Stateex rel. Department of Transportation, 646 P.2d 605 (Okla. 1982) and MacManus v. Love, 499 P.2d 609 (Colo. 1972). A legislative appropriation would be necessary for the expenditure or granting of those federal monies deposited in the state treasury. However, the federal funds or custodial funds which the state holds are not subject to the restrictions contained in Article XIII, § 3.
It is our opinion that if the Department of Aeronautics receives federal money on behalf of the state, a municipality, or the owner of a privately-owned public use airport, for the acquisition, construction, improvement, maintenance, and operation of airports, the expenditure of such federal funds would generally not be restricted by Article XIII, § 3. However, we point out that the receipt and expenditure of such federal funds would be governed by any terms and conditions imposed by federal statutes, rules, and regulations. To the extent that the state was placed in the position of a surety or guarantor of the debt of another as a term or condition of a federal grant program, we believe that the receipt and expenditure of such federal funds under those conditions would indeed violate Article XIII, § 3 as further explained below.
LB 609 also authorizes the use of state funds to assist privately-owned public use airports. To determine whether this expenditure of state funds would violate Article XIII, § 3, we return to the three-prong test set forth in Haman v. Marsh.
The threshold question which must be analyzed is whether the proposed amendments to LB 609 involve the "credit of the state." In Haman, the court stated as follows: "There is a distinction between the loaning of state funds and the loaning of the state's credit. When a state loans funds, it is in the position of creditor, whereas the state is in the position of debtor upon a loan of credit." Id. at 719-720. In Haman, the court found that under the legislation in question, "the state would be forever liable for the losses of industrial company depositors. . . ."Id. at 720. "The stated purpose of the act is redemption of the guarantees of a private corporation to depositors by obligating present and future taxes from the state's general fund." Id.
You state in your opinion request that the Department of Aeronautics has established a revolving loan program. We note that Neb. Rev. Stat. §§ 3-101 through 3-158 do not refer to a specific loan program, but pertain generally to the receipt and expenditure of state and federal funds for the acquisition, construction, maintenance, and operation of airport facilities, which language appears broad enough to include gifts and grants. To the extent that LB 609 provides that the Department may give or loan state funds to persons owning privately-owned public use airports, it does not appear to us that such provisions result in the state being either a surety or guarantor of another's debts. Therefore, we conclude that LB 609 does not violate Article XIII, § 3. As stated above, the exception would be any state or federal requirement that would require the state to guarantee the debt of the private owner.
Although the "credit of the state" is not being given or loaned under the aeronautic statutes as amended by LB 609, the constitutional analysis does not end there. "Closely related to the prohibition against the giving or lending of the state's credit . . . is the principle of law that public funds cannot be expended for private purposes." Haman v. Marsh, 237 Neb. 699 at 721-722. This constitutional principle involves the expenditure of state funds in contrast to the extension of credit. While the State Constitution contains no express provision against expending funds for essentially private purposes, the Nebraska Supreme Court has stated that this principle "is grounded on the `fundamental concepts of our constitutional system.'" State exrel. Douglas v. Thone, 204 Neb. 836, 842, 286 N.W.2d 249 (1979) (quoting Beck v. City of York, 164 Neb. 223).
There is no hard and fast rule for determining whether a proposed expenditure of public funds is for a public purpose. InPlatte Valley Public Power Irrigation District v. County ofLincoln, 144 Neb. 584, 14 N.W.2d 202 (1944), the Nebraska Supreme Court discussed the parameters of a "public purpose." "A public purpose has for its objective the promotion of the public health, safety, morals, security, prosperity, contentment, and the general welfare of all the inhabitants." Id. at 589.
Since the determination of a public purpose is primarily for the Legislature, it is appropriate to look to the legislative findings or statement of purpose in analyzing a particular statute. The purposes of Neb. Rev. Stat. §§ 3-101 to 3-154 are described at Neb. Rev. Stat. § 3-102 (1991). Those purposes include granting powers to the Department of Aeronautics so that the state "may assist in the promotion of a statewide system of airports, may cooperate with and assist the political subdivisions of the state and others engaged in aeronautics, and may encourage and develop aeronautics. . . . Neb. Rev. Stat. § 3-102(3). LB 609 would amend Neb. Rev. Stat. § 3-147 to read that the acquisition, establishment, construction, enlargement, improvement, maintenance, equipment, and operation of airports, whether by the state separately or jointly with a municipality or any person owning a privately-owned public use airport and the assistance of the state in accomplishing those functions are declared to be public and governmental functions, exercised for a public purpose.
The Nebraska Supreme Court has held that it is for the Legislature to determine in the first instance what is and what is not a public purpose. State ex rel. Douglas v. Thone, 204 Neb. 836,286 N.W.2d 249 (1979). The Court also held therein that there is no requirement that a legislative act calling for the expenditure of public funds need contain an express declaration of public purpose. Id. at 844-845. A number of cases from our Supreme Court have evidenced a somewhat flexible interpretation of the public purpose doctrine in relation to the expenditure of state monies. For example, with regard to housing, the Court found constitutional the act creating the Housing Authority of the City of Omaha in Lennox v. Housing Authority of City ofOmaha, 137 Neb. 582, 290 N.W. 451 (1940), and found constitutional the act creating the Nebraska Mortgage Finance Fund in State ex rel. Douglas v. Nebraska Mortgage Finance Fund,204 Neb. 445, 283 N.W.2d 12 (1979). The Court considered legislative findings such as the need for safe and sanitary housing and the need for adequate housing which could be financed by low income people in determining the existence of a public purpose.
However, the Nebraska Supreme Court has also held that laws which authorize the expenditure of state funds to encourage private enterprises do not serve a public interest. A statute offering compensation or a bounty to private companies to encourage the manufacture of sugar and chicory was found unconstitutional in Oxnard Beet Sugar Co. v. State, 73 Neb. 57
(1905). The Court based its decision on the lack of a public purpose and did not undertake a "lending the credit of the state" analysis.
In Chase v. County of Douglas, 195 Neb. 838, 241 N.W.2d 334
(1976), the Court found that the provisions of the statute authorizing expenditures for the purpose of acquiring real estate or options on real estate for industrial development were unconstitutional and in violation of Article XIII, § 3 of the Nebraska Constitution. Their holding was in part dependent upon another constitutional provision at Article XIII, § 2.
More recently, in discussing the purpose of Article XIII, § 3, the Nebraska Supreme Court has referred to the historical genesis of this provision and similar provisions found in most other state constitutions. Haman v. Marsh,237 Neb. at 718, citing City of Tempe v. Pilot Properties, Inc.,22 Ariz. App. 356, 527 P.2d 515 (1974). Such provisions are therein described as representing public reaction during the 19th century to the dissipation of public funds in aid of the construction of railways and canals. They were designed to prevent the use of public funds for enterprises actually engaged in private business.
Conclusion
It is our opinion that LB 609 does not violate Article XIII, § 3 of the Nebraska Constitution. A strong argument can be made that nonstate funds are not subject to the restrictions of Article XIII, § 3. As to state funds, it does not appear that LB 609 requires the giving or lending of the state's credit to private parties. Instead, it would allow the loan or grant of state funds.
We do note that LB 609 might be challenged under the "public purpose" doctrine as allowing a private entity to use state funds or property for a direct benefit to private industry with only a remote or indirect benefit to the public. Although Neb. Rev. Stat. § 3-147, as amended, makes a general statement as to public purpose, the direct benefit to the public is not apparent. We also point out, as previously discussed, that the Nebraska Supreme Court has held that what constitutes a public purpose is primarily for the Legislature to determine, and all doubts are generally resolved in favor of the Legislature.
Sincerely yours,
 DON STENBERG Attorney General
 Lynn A. Melson Assistant Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature
APPROVED BY:
Don Stenberg 
Attorney General