CRETE MILLS, APPELLEE, V. NEBRASKA STATE BOARD OF AGRICULTURE, APPELLANT.

271 N. W. 684 .

FILED FEBRUARY 26, 1937. No. 29766.

*William H. Wright, Attorney General,* and *George W. Ayres,* for appellant.

*George I. Craven, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY and CARTER, JJ., and MESSMORE, District Judge.

EBERLY, J.

This is an action at law by the Crete Mills, a corporation, against the Nebraska state board of agriculture as defendant. The plaintiff sues to recover from defendant for grain, feed, and mill products, which, the evidence discloses without question, were purchased by defendant, were shipped and delivered by plaintiff to defendant, and the latter in

turn sold and disposed of the property thus received to exhibitors and holders of concessions at the Nebraska state fair, then being carried on by defendant; further, that the proceeds and profits of the sale thus made by defendant were appropriated by it to its own use, and that, in part settlement of the obligation thus incurred, defendant executed the note in suit by and through its duly authorized agent.

The defense in the district court was, in substance, that the Nebraska state board of agriculture, a corporation, is a public corporation, organized by act of the legislature of Nebraska as an instrumentality of the state, and as a part thereof is incapable of being sued without consent of the legislature, and that no such consent has been given.

In the trial had in the district court for Lancaster county, ultimately a jury was waived, and the issues were determined by the district judge in favor of plaintiff, and judgment was entered as prayed. The defendant appeals.

The crux of the situation presented by the appeal is the inherent nature of the defendant. Is it a public corporation constituting a governmental agency, within the protection of the principle that a sovereignty may not be sued without its consent?

The history of the legislation on the subject is suggestive. It appears that on October 14, 1858, there was duly approved by the then governor of the territory of Nebraska an act duly passed and enacted by the council and house of representatives of the territory of Nebraska, entitled, "An act to establish a territorial board of agriculture." Vol. 1, Complete Session Laws of Nebraska, 1855-1865, pp. 530, 531. It embraced twelve sections. The first three and the last five sections of this act were devoted to the subject of county agricultural societies, their organization and regulation.

Section 4 of the act provided that certain named persons were "hereby created a body corporate with perpetual succession * * * under the name and style of the Nebraska territorial board of agriculture."

Section 5 provided: "It shall be the duty of said board or a majority of them to meet at Omaha city as soon after the passage of this act as a majority of them may agree upon, and organize by electing a president, secretary, and treasurer, and such other officers as they may deem necessary; also to determine by lot the time that each member shall serve, so that the term of service of one-half of the members shall expire annually on the day of the annual meeting. And the president shall have power to call meetings of the board whenever he may deem it expedient."

Section 6 contained the following: "There shall be held at some central point in the territory, to be agreed upon by the board at their session, an annual meeting of the board, together with the president of each county society or other delegate therefrom duly authorized, who shall for the time being be *ex officio* member of the territorial board of agriculture, for the purpose of deliberation and consulting as to the wants, prospects, and condition of the agricultural interests throughout the territory; and at such annual meeting the several reports from the subordinate societies shall be delivered to the president of the territorial board, and the said president and delegates shall at this meeting elect suitable persons to fill all vacancies in the territorial board of agriculture."

Section 7 provided for the making of an annual report, "so as to give a general view of the condition of agriculture throughout the territory, accompanied by such recommendations as they may deem important and useful."

The subject of the holding of a state fair does not appear to be covered by the terms of this act.

In 1866 there was enacted by the territorial legislature, "An act for revising, amending, consolidating, and reenacting the Civil and Criminal Codes, and the laws of a general nature, of the territory of Nebraska." Under "Part I, chapter 1, Agriculture," were substantially reenacted the provisions relative to county agricultural societies as originally adopted in 1858, and likewise substantially the provisions relative to the territorial board of agriculture. To the lat-

ter, however, the following provision was added: "For the purpose of aiding agricultural pursuits in this territory, the sum of three hundred dollars be and hereby is appropriated out of the territorial treasury, and annually hereafter, subject to the order of the president and secretary of the territorial board of agriculture. Said amount to be used in the payment of premiums awarded by said board in the various branches of agriculture, and for no other purpose; Provided, That should the board fail in any year to offer and award premiums for the encouragement of agricultural pursuits, then the benefits of this chapter shall not be available that year." Vol. 2, Complete Session Laws of Nebraska, 1866-1877, p. 4.

The last-named enactment was in turn superseded by, "An act for the government, support, and maintenance of the state board of agriculture and state horticultural society," and "Approved, February 25, A. D. 1879." This act, substantially a reenactment of previous legislation, accomplished the change of name from territorial board to state board, and the sum appropriated by the state for the payment of premiums was increased from $300 to $2,000. Laws 1879, p. 396.

In 1883 section 1 of the act of 1879 was amended, as appears by chapter 1, Laws 1883, by adding thereto these words: "The said board shall also have power at the annual meeting to locate the state fair for a period not exceeding five years at any one time or at any one place."

This section was again amended by chapter 1, Laws 1899, which substituted for the provision last quoted the following: "The state fair shall be held annually at or near the city of Lincoln, in Lancaster county, under the direction and supervision of the state board of agriculture, and the state board of public lands and buildings is hereby authorized, empowered and directed to select a site for the same within a radius of three miles of the present state capitol building and to purchase a suitable tract of land for such a site; Provided, however, that said board of public lands and buildings after selecting said site, shall pay

not to exceed the sum of one dollar for a clear and sufficient title therefor."

In 1901 the legislature enacted chapter 1 of the session laws of that year, under the title: "An act authorizing the purchase of land for state fair purposes and to appropriate the sum of thirty-five thousand ($35,000) dollars, or so much thereof as may be necessary, for the purchase and improvement thereof, and to amend section 1, article 1, chapter 2, Compiled Statutes of Nebraska for the year 1899, and to repeal said section as now existing." Laws 1901, ch. 1. It appears, however, that this act contained no repealing clause. In Cobbey's Annotated Statutes of 1909, under section 3000 thereof, appears the following note: "The title of the amendatory act repeals this section, but the act itself does not repeal it, so it is published as still in force. The amendatory act, being temporary in its nature, is not published."

The Revised Statutes of 1913, however, changed the language of the act of 1899, so that it now reads: "The state fair shall be held annually at or near the city of Lincoln, in Lancaster county, under the direction and supervision of the state board of agriculture, upon the site and tract of land, selected and now owned by the state for that purpose and known as the state fair grounds." Rev. St. 1913, ch. 1, sec. 1. This was continued in the Compiled Statutes of 1922 and the Compiled Statutes of 1929.

In this connection, section 2, art. VIII of the Constitution, provides: "The property of the state and its governmental subdivisions shall be exempt from taxation. The legislature by general law may exempt property owned by and used exclusively for agricultural and horticultural societies * * * when such property is not owned or used for financial gain or profit to either the owner or user."

It is obvious, under this provision, that the defendant does not secure exemption from taxation because of its character as a governmental agency, but solely because its property is owned and used exclusively by an agricultural society and not "for financial gain or profit to either the owner or user."

In 1919 there was enacted chapter 190 of the session laws of that year, which constituted the Civil Administrative Code of this state. However, the Nebraska state board of agriculture was neither expressly nor by necessary implication embraced within its provisions, and was not subject to laws or regulations as a part thereof. This Code, in terms, created a department of agriculture as an executive organization. While its name has been changed, its functions and powers have since been substantially continued. See Comp. St. 1929, sec. 81-501; Comp. St. Supp. 1935, sec. 81-107. But it cannot be said that the state department of agriculture embraces or includes the defendant in the instant case as either the subject of its regulation or of its control.

The record further demonstrates beyond peradventure that, as a fact, the original incorporators of this board and their successors in interest, elected by them at the annual election, constituted a self-perpetuating body. The officers of this organization were continuously selected by the board, and its general policies were determined by the annual meeting at which the original incorporators and their successors in interest, by them selected, were supreme. The electors of the state generally had no voice in the proceedings of this board, and the political officers of the state exercised no powers of selection or appointment of its officers, or direction or control over its general business affairs. In the conduct of the Nebraska state fair, this board received an annual donation from the state for the payment of premiums. The state also made certain donations of funds and property, and the board, as a corporation, in turn made an annual report covering receipts and disbursements. At the present time certain reports are required annually by the state authorities of most private corporations.

It may be said, in passing, that the record discloses that since 1901, and excluding the $35,000 appropriation of that year, the sum of $456,184.97 has been taken out of the state fair receipts and put into permanent improvements, and that during the same period $471,829.40 of money

derived from the same source has been paid out for labor and repairs.

In this state, "the powers of the government * * * are divided into three distinct departments, the legislative, executive and judicial" (Const. art. II, sec. 1) ; and the supreme executive power is vested in the governor.

The inherent nature of the corporation under consideration would preclude the classification of powers exercised by it as "legislative" or "judicial."

It would seem that the legislative intent evidenced by the statutory enactments hereinbefore referred to would also remove this corporation from consideration as an "executive" agency. Since 1858 it has consistently operated independently, and as removed from executive control and direction. It cannot be considered as an independent executive department of government. Section 1, art. IV of the Constitution, provides: "The heads of all executive departments established by law, other than those to be elected as provided herein, shall be appointed by the governor, with the consent of" the legislature. So, too, the record discloses that the corporation in suit collects its receipts from admissions to fairs, and from charges against concessions, and from other like sources of income, and pays out and disburses the same by and through its own officers as a private corporation. Section 25, art. IV of our Constitution, provides for the payment of state funds "forthwith into the state treasury." Section 9, art. VIII, provides for the examination and allowance of claims against the state by the state auditor, and their approval by the secretary of state, before any warrant therefor shall be drawn. And section 25, art. III, provides: "No money shall be drawn from the treasury except in pursuance of a specific appropriation made by law, and on the presentation of a warrant issued by the auditor thereon."

In the instant case, there is no history of any compliance with these fundamentals by this corporation. It is obvious, therefore, that neither the inherent nature of the Nebraska state board of agriculture, the manner in which its per-

petuity is accomplished, the character of the business carried on, the method of its performance, nor the purpose sought to be attained, in any manner determines its character to be that of a public governmental agency, to which the principle of exemption from suit without assent of the state is applicable. In support of this conclusion, we cite the following authorities: 1 R. C. L. 783, sec. 2, wherein it is stated: "Although in rare instances agricultural societies are not incorporated associations, the majority of them are, and it is only with respect to the nature of the latter that there is any difference of opinion, as the former are but unincorporated societies governed by the general principles of law applicable to partnerships. Where incorporated, however, the question arises as to whether they are to be classed as private corporations, or as municipal corporations. * * * They are the result of the voluntary association of the persons composing them, and are not created by the state, of its own sovereignty, without the consent of the persons who constitute them. They are not territorial or political divisions of the state, nor are they entrusted with any of the ordinary attributes of sovereignty for the purpose of local government. The fact that the state may make annual contributions to assist them in offering prizes and premiums, and may require in return the rendition of an annual accounting thereof, together with reports or statistics relating to agricultural matters and the like, is absolutely immaterial; for they may accept such donations with the conditions that accompany them, or not, just as they see fit. They are not mere passive recipients of their corporate powers and duties, with no power to decline them or refuse their execution. They are as free from the interference or control of the government as private individuals, and cannot, therefore, enjoy any privileges which may not be enjoyed by the individual. These principles are equally true of both local and state agricultural societies, and the fact that no shares of stock are issued is of no consequence in determining their nature. Consequently, the authorities are almost unanimous in holding that they are simply pri-

vate corporations, with none of the privileges or immunities of municipal corporations."

In 1 Thompson, Corporations (3d ed.) pp. 35, 36, the following appears: "That a corporation is organized to promote objects of a public nature does not necessarily deprive it of its private character. 'The fact of the public having an interest in the work or the property or the object of a corporation, does not make it a public corporation. All corporations, whether public or private, are in contemplation of law, founded upon the principle that they will promote the interest or convenience of the public.' * * * The corporate character is not lost by reason of the fact that the state may control the appointment of some of the directors. A corporation chartered for public purposes and vested with the right of eminent domain was held to be a private corporation. A corporation is said to be private unless the whole interest belongs to the government, or it is created for the administration of political or municipal power."

"In the *Dartmouth College* case, Mr. Justice Washington discussed at length the proper method of division of corporations. He said: 'Public corporations are generally esteemed such as exist for political purposes only, such as towns, cities, parishes and counties; and in many respects they are so, although they involve some private interests; but, strictly speaking, public corporations are such only as are founded by the government for public purposes when the whole interests belong also to the government. If, therefore, the foundation be private, though under the charter of the government, the corporation is private, however extensive the uses may be to which it is devoted, either by the bounty of the founder or the nature and objects of the institution. For instance, a bank created by the government for its own uses, whose stock is exclusively owned by the government, is in the strictest sense a public corporation. So a hospital created and endowed by the government for general charity. But a bank whose stock is owned by private persons is a private corporation, although it is erected

by the government, and its objects and operations partake of a public nature. The same doctrine may be affirmed of insurance, canal, bridge and turnpike companies. In all these cases the uses may, in a certain sense, be called public, but the corporations are private; as much so, indeed, as if the franchises were vested in a single person.'" 1 Smith, Modern Law of Municipal Corporations, pp. 3 and 4, citing, *Dartmouth College v. Woodward,* 4 Wheat. (U. S.) *518, *668; *Osborn v. U. S. Bank,* 9 Wheat. (U. S.) 738; *Bank of United States v. Planters Bank,* 9 Wheat. (U. S.) 904; *Rundle v. Delaware & Raritan Canal,* 1 Wall. Jr. 275, 290.

In *Downing v. Indiana State Board of Agriculture,* 129 Ind. 443, 28 N. E. 123, 12 L. R. A. 664, we have a situation in principle quite similar to that presented in the instant case. The Indiana board of agriculture was created by an act of the legislature of that state, approved February 14, 1851. The question upon which the case was determined was whether the Indiana board of agriculture was a private corporation. Its constituting act was substantially identical in terms with the legislation we have referred to in the instant case. After reviewing the precedents, the Indiana court continues:

"Under the rules stated it is clear that the Indiana state board of agriculture is a private corporation, and it matters not to what extent the state has voluntarily aided it by contributions and appropriations.

"The corporation now owns a large amount of property. The main funds it has handled and used have been received from private citizens, railroad companies, the city of Indianapolis, and funds received from state fairs held by the board. The members of the board have not been chosen by the state; they are not state officers. It has not been a state institution. It is true there are no shares of stock issued and held by the trustees or private individuals. Neither are shares of stock issued by colleges and universities or charitable institutions, which are private corporations, and it is not necessary to make it a private corporation that shares of stock be issued. The act creating it made it a body cor-

porate, with perpetual succession in the manner prescribed. It is in a sense an educational institution. It seeks to bring together people engaged in agricultural pursuits, as well as those engaged in manufacturing farm machinery and other articles adapted to use in the cultivation of the soil and harvesting of crops, and other articles used by the public, as well as those engaged in raising stock, and to exhibit to those in attendance the crops resulting from the various methods of farming, and the various machinery manufactured for the use of those engaged in agricultural pursuits, as well as the various breeds of stock, and give to the people of the state, and particularly those engaged in agricultural pursuits, an opportunity of discussing various methods of farming and farm implements used, and the different breeds of stock raised, and to educate the people in this way in the pursuits of agriculture, and to educate and improve the condition of the agriculturist, that they may have a knowledge of the best methods of farming, best machinery to use, and the best breeds of stock.

"An agricultural society is defined in the Century dictionary as 'A society for promoting agricultural interests, such as the improvement of land, of implements, of the breeds of cattle,' etc.

"A new English dictionary defines an agriculturist as 'A student of the science of agriculture.' * * *

"The trustees so elected have no financial interest in the property of the corporation, that is to say, they are not the owners of the property of the corporation in such a sense as that they can sell it and appropriate the proceeds to their own use any more than could the trustees of the state university sell and convert the proceeds of the property to their own use; they are simply trustees to manage and control it."

Accordingly, the Indiana court determined that the board of agriculture of that state was, in strictness, a private corporation, and awarded it those rights which it was entitled to as such.

See, also, *Tongue v. State Board of Agriculture*, 55 Or.

61, 105 Pac. 250; *Lake County Agricultural Society v. Verplank*, 71 Ind. App. 186, 124 N. E. 494; *Lane v. Minnesota State Agricultural Society*, 62 Minn. 175, 64 N. W. 382; *Wilson v. Thayer County Agricultural Society*, 115 Neb. 579, 213 N. W. 966; *Pain v. Kiel*, 288 Fed. 527; *Dunn v. Brown County Agricultural Society*, 46 Ohio St. 93, 18 N. E. 496, 1 L. R. A. 754.

We have carefully examined the cases which are cited and relied upon by the appellant. They are to be distinguished from the instant case, because of the different terms of the statutes involved in each.

Thus, for example, in *Morrison v. Fisher*, 160 Wis. 621, 152 N. W. 475, the members of the Wisconsin state board of agriculture were appointed by the governor, and vacancies therein were filled by him. The state treasurer of Wisconsin was *ex officio* a member of the board, and whatever moneys were received were paid to and disbursed by such state treasurer.

In *Berman v. Minnesota State Agricultural Society*, 93 Minn. 125, 100 N. W. 732, the supreme court of Minnesota say, in part: "Subsequent to the decision of *Lane v. Minnesota State Agricultural Society*, 62 Minn. 175, chapter 126, p. 170, Laws of 1903, was enacted, wherein it was provided that the existing rights of the former society were confirmed. It was declared to be a public corporation, and one of the departments of the state; * * * the title to all moneys and property of the state agricultural society was thereafter vested in the state of Minnesota."

In *Busby v. Indiana Board of Agriculture*, 85 Ind. App. 572, 154 N. E. 883, we note that the court bases its determination on the fact "that the Indiana board of agriculture was created as an agency of the state for the purpose of managing and conducting a *department of the state* pursuant to art. 8, sec. 1 of the Constitution, sec. 189 Burns 1926." (Italics ours.)

*Melvin v. State,* 121 Cal. 16, 53 Pac. 416, was decided upon a statute that expressly provided, in the first section thereof, that "the state agricultural society is hereby de-

clared to be a state institution," and in the second section, the governor is required "to appoint twelve resident citizens of the state, who shall, when organized, constitute 'a state board of agriculture.'"

The present case involving solely a question of statutory construction, it is obvious that the cases cited by appellant are not persuasive, in view of the essentially different statutory provisions upon which they are based.

It follows that the Nebraska state board of agriculture is essentially a private corporation, possessing no exemption from suit or liability, and that the judgment of the district court for Lancaster county is, in all respects, correct, and is

AFFIRMED.