STATE OF NEBRASKA EX REL. FRANK MARSH, STATE TREASURER, APPELLEE, v. NEBRASKA STATE BOARD OF AGRICULTURE, APPELLANT.

350 N.W.2d 535

Filed June 15, 1984. No. 83-194.

Hal Bauer of Bauer, Galter & Geier, for appellant.

Paul L. Douglas, Attorney General, and John Boehm, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

Nebraska State Board of Agriculture, defendant, has appealed an order of the district court granting the plaintiff's motion for summary judgment.

The State of Nebraska brought suit against the Nebraska State Board of Agriculture to recover a total of $40,165.62, representing unclaimed winning parimutuel tickets for the years 1960 to 1972. The plaintiff claims the money under the provisions of the Nebraska Uniform Disposition of Unclaimed Property Act, Neb. Rev. Stat. §§ 69-1301 to 69-1329 (Reissue 1981), passed in 1969. We affirm the judgment of the district court.

The case was submitted to the court on a stipulation of facts. Nebraska State Board of Agriculture is a nonprofit organization licensed by the Nebraska State Racing Commission to conduct horseracing and parimutuel wagering at the state fairgrounds in Lincoln.

Prior to each horserace, wagers are placed on the outcome of the race, and the bettors are issued a ticket which reflects the amount and nature of the wager. The bettor is not identified on the ticket, no record is kept of the identity of the bettor, and a winning ticket may be cashed by any person in possession of a ticket.

From 1960 to 1972 some of the winning tickets sold had never been presented for redemption, and have remained unsurrendered and unpaid. Various reasons exist for unpaid tickets. The most likely is that persons failed to recognize they held a winning ticket and subsequently destroyed or lost their claim to money. Defendant kept records disclosing the net amount of unpaid winnings and reported the amounts to both the State Racing Commission and the Nebraska Department of Administrative Services.

For the time period relevant to this action, rule 23(1)(l) of the State Racing Commission provided: "After the lapse of one full year immediately following date of purchase, no parimutuel ticket shall be eligible for redemption or payment by any Association."

Rule 23(1)(i) provided: "Any claim by a person that a wrong ticket has been delivered to him must be made before leaving the mutuel ticket window. No claims need to be considered thereafter, and no claim need be considered for tickets thrown away, lost, changed, mutilated or destroyed."

Here we note that neither the Nebraska statutes nor the State Racing Commission determines the ownership of the unclaimed winnings. The practice has been for the defendant to transfer the funds to its general operating budget 1 year after the date of purchase, to be used to defray operating costs and to contribute to 4-H and other nonprofit youth and state agricultural activities.

The Uniform Disposition of Unclaimed Property Act (UDUPA), as earlier noted, was passed in Ne-

braska in 1969. It provides generally that property held by a person which remains unclaimed by the owner for more than 7 years is presumed abandoned and shall be turned over to the State Treasurer by the person holding the property. The plaintiff relies on this act to make its claim for the uncollected winnings.

In 1980 the Nebraska Legislature enacted Neb. Rev. Stat. § 2-1223 (Reissue 1983) to exempt licensed corporations or associations conducting horseracing by the parimutuel method from the provisions of the UDUPA, effective April 24, 1980.

The defendant assigns as error: (1) The trial court's determination that the UDUPA was applicable to unclaimed parimutuel winnings; (2) The finding that rules 23 (1)(i) and 23(1)(l) of the Nebraska rules of racing were null and void; (3) The finding that the UDUPA was applicable to all unclaimed parimutuel winnings between 1960 and 1972; (4) The court erred in giving a retroactive effect to its ruling voiding the rules of racing; and (5) The court erred by overruling the defendant's motion for summary judgment.

Before analyzing whether unclaimed parimutuel winnings are subject to the unclaimed property act, the relationship between the parties in a parimutuel transaction should be made clear.

Neb. Rev. Stat. § 2-1207 (Reissue 1977) provides that the "licensee may receive wagers of money from any person present at such race . . . and the person so wagering shall acquire an interest in the total money so wagered . . . ." It goes on to state that the licensee may deduct from the total sum wagered on all horses a certain percentage, with the balance remaining on hand to be paid out to the holders of certificates on the winning horse in proportion to the amount wagered. The State receives its moneys by imposing a tax on the gross sum wagered by the parimutuel method at each race meeting.

Between the licensee and bettors, the relationship has been held to be in the nature of a contract. *Racing Com. v. Multnomah Kennel Club*, 242 Or. 572, 411 P.2d 63 (1966); *Wise v. Dela. Steeplechase & Race Ass'n*, 28 Del. Ch. 532, 45 A.2d 547 (1945).

The licensee is merely an agent, legally created by statute, for taking, holding, and distributing the money wagered by the participants who are the parties to the wagering transaction. *Holberg v. Westchester Racing Assn.*, 184 Misc. 581, 53 N.Y.S.2d 490 (1945). The result is that the defendant is in possession of a sum of money as a custodian, depositary, or administrative agent, out of which it is obligated to pay unknown bettors the amount of their winnings, but which can be paid only by presentation of their tickets.

The plaintiff contends that when unclaimed winnings are held for more than 7 years from the date of the issuance of their corresponding winning tickets, they are presumed abandoned by operation of the UDUPA, and are reportable and deliverable to the State Treasurer. The plaintiff argues that § 69-1302(c), which applies to a banking or financial organization or business association, and § 69-1308, the miscellaneous, or omnibus, provision, apply to the facts of this case.

Section 69-1301(b) defines a business association as "any corporation (other than a public corporation), joint stock company, business trust, partnership, or any association for business purposes of two or more individuals."

The Nebraska State Board of Agriculture was statutorily created, Neb. Rev. Stat. §§ 2-101 to 2-130 (Reissue 1983), and would appear to be within the exception for public corporations. However, in *Crete Mills v. Nebraska State Board of Agriculture*, 132 Neb. 244, 271 N.W. 684 (1937), this court held that the Nebraska State Board of Agriculture was essentially a private corporation, possessing no exemption from suit or liability.

In *Crete Mills*, where the Nebraska State Board of Agriculture, a nonprofit corporation, purchased grain and in turn sold it for profit to other parties using the fairgrounds, the nature of the corporation became private. In the same sense, we believe that the Nebraska State Board of Agriculture, engaging in parimutuel betting, is a "business association" as contemplated by the UDUPA.

Section 69-1302(c) defines abandoned property as follows:

> Any sum payable . . . on written instruments issued in this state on which a banking or financial organization or business association is directly liable . . . that . . . has been outstanding for more than seven years from the date it was payable, or from the date of its issuance if payable on demand . . . unless the owner has within seven years . . . corresponded in writing with the banking or financial organization or business association concerning it, or otherwise indicated an interest as evidenced by a memorandum on file with the banking or financial organization or business association.

"A pari-mutuel ticket is an instrument payable on demand when the demand is accompanied by presentation of the ticket." *Racing Com. v. Multnomah Kennel Club, supra* at 584, 411 P.2d at 68.

Having made the determination that the defendant is a "business association" and that the unclaimed winnings have resulted from payable-on-demand instruments outstanding for more than 7 years from the date of issuance, the UDUPA is applicable unless the rules and regulations eliminate the property from the act.

Both parties agree that the State's rights under the UDUPA are strictly derivative, and therefore the uniform act is distinct from escheat laws and the State acquires no greater property right than the owner. The State may assert the rights of the owners, but it has only a custodial interest in property

delivered to it under the act. *Insurance Co. of North America v. Knight*, 8 Ill. App. 3d 871, 291 N.E.2d 40 (1972); *S. C. Tax Comm. v. Metropolitan Life Ins. Co.*, 266 S.C. 34, 221 S.E.2d 522 (1975).

The contention of the defendant is that the sums from unclaimed parimutuel tickets are not "held" or "owing" and are not outstanding, because the rules of racing extinguished the claim holders' interest, and any subsequent derivative claim by the plaintiff is also extinguished. This argument is dependent upon whether rules 23(1)(i) and (1) of the State Racing Commission are valid, the second assignment of error.

The defendant contends that the trial court erred in finding rules (23)(1)(i) and (1) null and void for lack of statutory authority. It points as authority to make such rule to Neb. Rev. Stat. § 2-1203 (Reissue 1977), which provides in part as follows: "The commission shall have power to prescribe and enforce rules and regulations governing horse races and race meetings, licensed as hereinafter provided."

It further insists that a presumption of validity exists and that such regulations of an administrative agency are binding as if they were statutes enacted by the Legislature.

The plaintiff contends that the rules are invalid because there is no statutory authority to allow the State Racing Commission to enact rules and regulations extinguishing the rights of ticketholders, nor is there any statutory authority which authorizes the defendant to convert the winnings to its own organizational uses.

In its decision the trial court found that these rules were null and void for lack of statutory authority, *to the extent* that they purported to extinguish the rights of winning parimutuel wagerers to make claims against winning parimutuel pools for their share of the winnings. The trial court also found that no authority exists under the statutes of the State of Nebraska or the rules and regulations of the

State Racing Commission entitling the defendant to convert to its own use and expend for its own purposes sums of money retained by it as unclaimed winnings.

We agree with the trial court that to the extent the rules are used to extinguish ownership rights, which the defendant has no authority to do, they are null and void. Although previous practice and rule 23(1)(1) imply that the defendant may be permitted to take the money, no Nebraska statute entitles the defendant to the money in controversy. In fact, except for the UDUPA, no statute exists to determine what disposition should be made of unclaimed winnings.

The State Racing Commission, which enacted the rules in question, established a regulation governing more than a horserace; the rule attempted to terminate ownership interests. An administrative agency is limited in its rule-making authority to powers granted to the agency by the statutes which it is to administer. *Bond v. Nebraska Liquor Control Comm.*, 210 Neb. 663, 316 N.W.2d 600 (1982); *Lincoln Dairy Co. v. Finigan*, 170 Neb. 777, 104 N.W.2d 227 (1960).

In particular, § 2-1207 (Reissue 1977) declares that "the person so wagering shall acquire an interest in the total money so wagered" and that of the total sum wagered in each race, the licensee is entitled to deduct a certain percentage, after which the balance remaining on hand shall be paid out to the holders of the certificates on the winning horse. This statute by definition does not give the licensee an interest in the money wagered.

Since both parties agree that the rights of the State to custody of the unclaimed property under the UDUPA derive from the rights of the original owners, abrogation of rules (23)(1)(i) and (1) would subject the unclaimed parimutuel winnings to the provisions of the act.

The defendant next argues that the court erred by

finding the UDUPA was applicable to all unclaimed parimutuel winnings between 1960 and 1972, because certain claims are barred by § 69-1315. This provision provides that "holders shall not be required to report or to pay or to deliver abandoned property or unclaimed funds as to which the statute of limitations applicable to the enforcement of any claim to such property shall have expired prior to December 25, 1969."

The defendant contends that the applicable statute of limitations for the enforcement of rights created by the racing statutes is Neb. Rev. Stat. § 25-206 (Reissue 1979). Defendant uses this statute as an affirmative defense.

In regard to the statute of limitations, this court has said: "The benefit of the statute of limitations is personal and, like any other personal privilege, may be waived and will be unless pleaded." *Vielehr v. Malone*, 158 Neb. 436, 439, 63 N.W.2d 497, 501 (1954).

When it is not apparent from the face of the petition that the action is barred, the statute of limitations, as a defense, must be raised by answer. *Vielehr v. Malone, supra.* A general denial to the claim that the UDUPA was applicable to the moneys is insufficient to raise a specific affirmative defense contained within a statutory section.

The defendant also argues that § 69-1302, as originally enacted and as it existed at all times prior to its amendment by L.B. 305 in 1977, made the UDUPA inapplicable to claims involving property less than $50. The defendant further argues that the plaintiff failed to prove that any of the moneys claimed relate to tickets in excess of $50.

This court rejects these arguments, because the statute, as it existed in June of 1980 when this suit was filed, contained no such limitation on the amount of unclaimed property required to be reported to the State Treasurer, and the claim here is

against the unclaimed pool and not each outstanding ticket.

In *S. C. Tax Comm. v. York Electric Coop., Inc.*, 275 S.C. 326, 270 S.E.2d 626 (1980), the Supreme Court of South Carolina held a similar provision of the UDUPA, which exempted "any property in an amount less than twenty-five dollars," applicable to the aggregate of property or funds held by the holder (electric cooperative) representing unclaimed money or cash credits for former customers, even though each of the accounts was less than $25.

In the fourth assignment of error the defendant asks that in the event the rules of racing are invalid, then a decision should have a prospective effect only, and the State should be estopped from recovering any amount, under the equitable theory of laches. The defendant argues that it relied on the rules of racing during the years in question, could not have foreseen the decision of the lower court, points out there was a long delay between the passage of the UDUPA in 1969 and the commencement of this suit in June of 1980, and believes it would be inequitable to require payment to the State of sums of money which have long been expended.

Despite this alluring argument, we are not persuaded to hold for the defendant. Any loss to be sustained by the defendant is a direct result of its own action in expending the moneys without proper authorization. Furthermore, this is not a case where a new liability was created or where the State seeks to enforce a liability created by the Legislature with the adoption of the UDUPA.

"The defense of laches is not a favored one and it will be sustained only if the litigant has been guilty of inexcusable neglect in enforcing a right to the prejudice of his adversary." *Campbell v. Ohio National Life Ins. Co.*, 161 Neb. 653, 671, 74 N.W.2d 546, 558 (1956). It is not applicable in this case.

Having decided the first four assignments of error

in favor of the plaintiff, it is apparent the last assignment has no merit.

The judgment of the district court was correct and is affirmed.

AFFIRMED.

KRIVOSHA, C.J., concurs in the result.