REQUESTED BY: Senator Don Pederson Nebraska State Legislature
You have requested our opinion on "a number of issues surrounding the Nebraska State Fair Board," and you indicate, in your opinion request, that you anticipate introducing legislation in regard to those issues during the 2002 legislative session. We will separately set out and discuss each of your questions below. Several of your questions also include explanatory comments which we will include with the question.
 QUESTION 1 Is the State Fair Board a private corporation or a state agency? The territorial board was created in statute as a "body corporate," but this designation no longer exists in statute. The Nebraska Supreme Court ruled in 1984 that the current State Fair Board is a private corporation, but the board continues to receive benefits (state-owned fairground land and facilities rent free and appropriations/allocations from the general fund and the 309 funds) from the State of Nebraska, which is (sic) generally only available to state agencies.
The Nebraska State Board of Agriculture (commonly known as the State Fair Board) (hereinafter the "Board") has existed since legislation creating the Board was passed in 1858 when Nebraska was still a territory. Crete Mills v. Nebraska State Board of Agriculture,132 Neb. 244, 271 N.W. 684 (1937) (containing a discussion of the legislation creating the Board over time). The current statute creating the Board, which has remained unchanged since 1983, states:
 There shall be held prior to April 1 of each year, a meeting of the State Board of Agriculture, together with the president of each county society, or delegate therefrom duly authorized, who shall for the time being be ex officio members of the State Board of Agriculture, for the purpose of deliberating and consulting as to the wants, prospects, and conditions of the agricultural interests throughout the state. Such meeting shall be held in every odd-numbered year at the capital of the state, and in every even-numbered year at such location as the board may determine. At such annual meeting the several reports from the subordinate societies shall be delivered to the president of the board. The president and delegates shall at this meeting elect suitable persons to fill all vacancies in the board. The president shall also have the power to call meetings of the board whenever he or she may deem it expedient. The state fair shall be held at or near the city of Lincoln, in Lancaster County, under the direction and supervision of the State Board of Agriculture, upon the site and tract of land, selected and now owned by the state for that purpose and known as the state fairgrounds. The board may, at is discretion, hold or dispense with the holding of the fair, in any year.
Neb. Rev. Stat. § 2-101 (1997). In addition, Neb. Rev. Stat. § 2-102 (1997) provides:
 The officers of the board shall consist of a president, vice president, secretary, and treasurer, and such others as the board may deem necessary. They shall be elected at the annual meeting of the board, and shall hold their offices for the period of one year and until their successors are elected and qualified. The board shall determine by lot the time that each member shall serve so that the term of service of one-half of the members shall expire annually on the day of the annual meeting.
With respect to your first question regarding the nature of the Board, the Nebraska Supreme Court indicated in State ex rel. Marsh v.Nebraska State Board of Agriculture, 217 Neb. 622, 350 N.W.2d 535
(1984), that the Board was a private business association as contemplated by the Uniform Disposition of Unclaimed Property Act, rather than a public corporation under that Act. More significantly, in Crete Mills v.Nebraska State Board of Agriculture, 132 Neb. 244, 271 N.W. 684 (1937), the court held that the Board was "essentially a private corporation" which was not immune from suit under the doctrine of sovereign immunity.Id. at 256, 271 N.W. 689. In Crete Mills, the court based its holding, in part, upon the fact that the Board was a self-perpetuating body whose officers were selected by the Board rather than by the political officers or electors of the state, and upon the fact that the Board was not required to abide by various funding procedures required of state agencies by the Nebraska Constitution. The court stated:
 It is obvious, therefore, that neither the inherent nature of the Nebraska state board of agriculture, the manner in which its perpetuity is accomplished, the character of the business carried on, the method of its performance, nor the purpose sought to be attained, in any manner determines its character to be that of a public governmental agency, to which the principle of exemption from suit without assent of the state is applicable.
 Crete Mills at 250, 251, 271 N.W. 687. The factors that influenced the court in the Crete Mills case still exist, and consistent with that decision, we have indicated in previous opinions that, in our view, the Board is neither a state agency nor a political subdivision of the State of Nebraska. Op. Att'y Gen. No. 99038 (August 19, 1999); Op. Att'y Gen. No. 91087 (November 21, 1991); Op. Att'y Gen. No. 47 (March 27, 1985); 1977-78 Rep. Att'y Gen. 229 (Opinion No. 151, dated December 20, 1977). As a result, in response to your first question, we believe that the Board is a private corporation and not a state agency.
 QUESTION 2 Has the Nebraska Legislature enacted legislation that provides "special or exclusive privileges" to a corporation, association, or individual, in violation of the Nebraska Constitution, Art. III, Section 18? Neb. Rev. Stat. Sec. 77-2704.16, exempts the board, by name, from paying state sales tax.
In our opinion to Senator Beutler dated December 24, 1985, we indicated that is has been and continues to be our policy that we will not issue legal opinions to state legislators concerning the constitutionality of existing statutes. Op. Att'y Gen. No. 157 (December 24, 1985). That policy is based upon the constitutional function of the Legislature in enacting rather than enforcing legislation, and also upon the practical consideration that we may be called upon to defend the constitutionality of existing laws. In the present instance, it appears to us that a response to your second question would involve us in offering an opinion on the constitutionality of existing legislation. Therefore, for the reasons set out in our opinion to Senator Beutler in 1985, we must respectfully decline to do so. However, in the event that you draft proposed legislation in this area during the next legislative session, we will respond to specific questions regarding that legislation at that time.
 QUESTION 3 If the board is considered a private corporation, does a conflict exist between the provisions and the general fund appropriations and 309 fund allocations provided to the board? The constitution also prohibits the state from giving or loaning its credit to aid any individual, association or corporation.
The focus of your third question is apparently art. XIII, § 3 of the Nebraska Constitution which provides that "[t]he credit of the state shall never be given or loaned in aid of any individual, association, or corporation. . . ." We gather that you question the propriety of state general fund appropriations and 309 fund allocations to a private entity such as the Board.[1]
There are two aspects to an analysis of state expenditures under art. XIII, § 3, and the first aspect involves the state's credit. In that regard, the purpose of art. XIII, § 3 is to prevent the state or any of its political subdivisions from extending the state's credit to private enterprise. Callan v. Balka, 248 Neb. 469, 536 N.W.2d 47 (1995). "It is designed to prohibit the state from acting as a surety or guarantor of the debt of another." Haman v. Marsh, 237 Neb. 699, 718,467 N.W.2d 836, 850 (1991). It applies to the State and all of its political subdivisions. State ex rel. Beck v. City of York, 164 Neb. 223,82 N.W.2d 269 (1957).
The Nebraska Supreme Court has established a three-part test for determining whether an expenditure violates the credit aspect of art. XIII, § 3 of the Nebraska Constitution. To establish a violation of that constitutional provision, it must be shown that (1) the credit of the state (2) is given or loaned (3) in aid of any individual, association, or corporation. Callan, 248 Neb. at 476, 536 N.W.2d at 51;Haman, 237 Neb. at 719, 467 N.W.2d at 850. In that context, there is a distinction between the loaning of state funds and the loaning of the state's credit. The loan of state funds places the state in the position of a creditor, and the loan of state's credit places the state in the position of debtor. Callan, 248 Neb. at 476, 536 N.W.2d at 51; Haman,237 Neb. at 719, 720, 467 N.W.2d at 850. In addition, the prohibition against the pledge of the state's credit does not hinge upon whether the expenditure at issue achieves a "public purpose" when the pledge benefits a private individual, association or corporation. Haman,237 Neb. at 722, 467 N.W.2d at 852. Instead, the key focus of art. XIII, § 3 in that context is whether the state stands as a creditor through the expenditure of its funds, or as a debtor by the extension of credit in the interest of private parties. Callan, 248 Neb. at 479,536 N.W.2d at 53; Haman, 237 Neb. at 718, 722, 467 N.W.2d at 852. (1991).
When the state expends general fund appropriations or 309 fund allocations for the benefit of the Board, it appears to us that the state acts as a creditor to the Board with respect to those expenditures, and not a debtor. Under those circumstances, the state is not in the position of debtor to the Board, nor is the state in the position of surety or guarantor for the Board's debt. As a result, we do not believe that the appropriation of general fund monies or 309 fund allocations to the Board involves lending the credit of the state, and for that reason, such appropriations do not violate the credit aspect of art. XIII, § 3 of the Nebraska Constitution.
An analysis under art. XIII, § 3 does not end at that point, however. "Closely related to the prohibition against the giving or lending of the state's credit . . . Is the principle of law that public funds cannot be expended for private purposes." Haman, 237 Neb. at 722,467 N.W.2d at 851. That constitutional principle involves the expenditure of state funds in contrast to the extension of credit. Id. While the state constitution contains no express provision against expending public funds for private purposes, that principle "is grounded on the `fundamental concepts of our constitutional system.'" State ex rel.Douglas v. Thone, 204 Neb. 836, 842, 286 N.W.2d 249, 252 (1979) (quotingBeck v. City of York, 164 Neb. 223). That principle also emanates from art. XIII, § 3. Haman, 237 Neb. at 722, 467 N.W.2d at 851.
There is no hard and fast rule for ascertaining whether a proposed expenditure of public funds is for a public purpose. The Nebraska Supreme Court has indicated that "[a] public purpose has for its objective the promotion of the public health, safety, morals, security, prosperity, contentment, and the general welfare of all the inhabitants." PlatteValley Public Power Irrigation District v. County of Lincoln,144 Neb. 584, 589, 14 N.W.2d 202, 205 (1944). The court has also indicated that it is for the Legislature to determine in the first instance what is and what is not a public purpose. State ex rel. Douglasv. Thone, 204 Neb. 836, 286 N.W.2d 249 (1979).
In the present case, the Board has existed by statute since territorial days, and is statutorily charged with supervising and directing the operation of the Nebraska State Fair on the State Fairgrounds owned by the State of Nebraska. Given those duties and the Board's close ties to state government over the years, we cannot say that there clearly is no public purpose involved in general fund appropriations to the Board or in 309 fund allocations to the Board for the renewal and maintenance of state-owned buildings on the state fairgrounds. Consequently, we do not believe that such appropriations or allocations violate the second aspect of art. XIII, § 3 of the Nebraska Constitution.
 QUESTION 4 If the Board is considered a state agency and since they receive state funds, are they bound by state laws in regard to open meetings laws and hiring practices?
 1. Public Meetings Statutes
The Nebraska Public Meetings Statutes, Neb. Rev. Stat. §§ 84-1408
through 84-1414 (1999, Cum. Supp. 2000), require public bodies in Nebraska to publish notice of their meetings, hold their meetings in public, and generally conduct their business in full view of the citizens of the state. Under those statutes, a "public body" subject to the meetings provisions includes "all independent boards, commissions, bureaus, committees, councils, subunits, or any other bodies, now or hereafter created by the Constitution of Nebraska, statute, or otherwise pursuant to law." Neb. Rev. Stat. § 84-1409 (1)(c) (1999). Since the Board is created by statute, the definition of public body in § 84-1409
(1)(c), together with the fact that the Board receives state monies, would lend some credence to the notion that the Board is subject to the Public Meetings Statutes. On the other hand, the Nebraska Supreme Court clearly indicated in the Crete Mills case that the Board is a private corporation and not a state agency, and the Public Meetings Statutes normally apply to governmental bodies, and not to private organizations. In the face of that uncertainty, Nixon v. Madison County AgriculturalSociety, 217 Neb. 37, 348 N.W.2d 119 (1984) is helpful.
In the Nixon case, the Nebraska Supreme Court considered whether county agricultural societies in Nebraska were subject to the Public Meetings Statutes. The court noted that such societies were organized under the Nebraska Statutes, and that such societies could obtain the proceeds of a tax to be levied by the county board.[2] The court then stated:
 Although a county agricultural society resembles a private corporation in some respects, the statutory provisions which grant such a society the right to receive support from the public revenue give it a public character.
Nixon, 217 Neb. at 39, 348 N.W.2d at 119. On the basis of that right to receive support from the public revenue, the court then held that a county agricultural society was subject to the Public Meetings Statutes as a public body under § 84-1409 (1) (c). Consistent with the Nixon
case, we have also indicated in previous opinions that public bodies statutorily characterized as "public corporations" or public bodies with a right to receive public funds were subject to the Public Meetings Statutes. Op. Att'y Gen. No. 97012 (February 14, 1997) (Hospital Authority which was a "public corporation" and which received funds from a city was subject to Public Meetings Statutes); Op. Att'y Gen. No. 219 (July 23, 1984) (County Extension Service which had a right to county funds under certain circumstances was subject to Public Meetings Statutes).
The present situation involving the Board is distinguishable, however, from the situation before the court in the Nixon case. For one thing, while the Board does receive general fund monies and 309 fund allocations, it has no right to levy a tax for its support and no statutory right to public revenue. Moreover, the Nebraska Supreme Court has clearly indicated that the Board is a private corporation. The Board's lack of any statutory right to public revenue, coupled with its status as a private corporation, ultimately lead us to believe that, while the issue presents a close question, the Board is not a public body which is subject to the Public Meetings Statutes. Obviously, if that result is of concern to you, you may wish to consider remedial legislation.
 2. State Hiring Practices
We are unsure what you mean by "hiring practices" in connection with your Question 4. However, since the Board is a private corporation and not a state agency, we do not believe that the Board is subject to the provisions of the State Personnel System. In that regard, we indicated in a previous opinion that we did not believe that the Governor would have authority over a Board employee for purposes of extending that employee's accumulated leave under the State Personnel System. Op. Att'y Gen. No. 47 (March 27, 1985). That opinion was based upon the fact that the Board is not a state agency under the Crete Mills decision.
 QUESTION 5 Although the board has autonomy in managing the fair and carrying out its other responsibilities, the Legislature remains the ultimate authority over the board. If the board is considered a state agency, is there a conflict of interest with two state senators currently serving on the state fair board?
Again, we are not entirely sure what you mean by the term "conflict of interest" in your final question. If that reference is in regard to the Conflicts of Interest section of the Nebraska Political Accountability and Disclosure Act, Neb. Rev. Stat. §§ 49-1493 to49-14,104 (1998, Cum. Supp. 2000), we do not believe that legislators who are also members of the Board are subject to conflict of interest concerns with respect to decisions which they make as members of the Board, since the Board is a private corporation and not a state agency. On the other hand, it seems to us that members of the Legislature who are also Board members with an interest in the Board's affairs could be subject to provisions of the Accountability and Disclosure Act with respect to their duties as legislators, since a number of the provisions of that Act require disclosures regarding businesses with which a public official is associated. See, e.g., Neb. Rev. Stat. § 49-1496 (Cum. Supp. 2000) (Statement of financial interests to be filed by public officials must include information about "any business with which the individual was associated.") We suggest that any specific questions in this area be referred to the Accountability and Disclosure Commission, the agency with enforcement authority under the Act.
To the extent that your use of the term "conflict of interest" implicates separation of powers questions under art. II, § 1 of the Nebraska Constitution, we have previously indicated in an opinion to Senator Schellpeper that, in our view, he could serve on the Board and in the Legislature simultaneously without violating the Nebraska Supreme Court's decision in State ex rel. Spire v. Conway, 238 Neb. 766,472 N.W.2d 403 (1991) or art. II, § 1 of the Nebraska Constitution. Op. Att'y Gen. No. 91087 (November 21, 1991). That latter opinion was also based upon the notion that the Board is a private corporation and not a state agency.
Sincerely yours,
 DON STENBERG Attorney General
 Dale A. Comer Assistant Attorney General
Approved by:
___________________________ Attorney General
cc. Patrick J. O'Donnell
Clerk of the Legislature
[1] From materials provided by your staff, we understand that your reference to "309 fund allocations" is a reference to the state's Deferred Building Renewal Act under which state funds collected primarily from cigarette taxes are used for the renewal and maintenance of state-owned buildings. Neb. Rev. Stat. §§ 81-173 to 81-191.01 (1996, Cum. Supp. 2000). That Act originated in 1977 Neb. Laws LB 309.
[2] A review of the statutes cited by the Nebraska Supreme Court in theNixon case from the 1982 Cumulative Supplement to the Nebraska Statutes indicates that, under § 2-201, a county board was required to levy a tax for a county agricultural society under certain circumstances. That tax was assessed, levied and collected as with other county taxes.