REQUESTED BY: Senator M. L. Dierks Nebraska State Legislature
In our Op. Att'y Gen. No. 01038 (November 28, 2001), we considered a number of issues concerning the status of the Nebraska State Board of Agriculture (the "Board") as a state agency or a private corporation. Among other things, we concluded in that opinion that the Board is a private corporation, and not a state agency.
There are two bills currently pending before the Legislature which would affect the Board. LB 961 would abolish the Board and create a new State Fair Commission. The State Fair Commission would consist of nine members appointed by the Governor with the consent of the Legislature. Members of the State Fair Commission would serve a term of three years, and would direct and supervise the State Fair along with a State Fair Director, who would also be appointed by the Governor. The State Fair Commission would administer a new State Fair Fund for the conduct of the Nebraska State Fair, and that fund would include money appropriated to the fund by the Legislature, all monies of the Board as it existed prior to the passage of LB 961, and any money in the Nebraska State Fairgrounds Building Fund.
The other bill which would affect the Board is LB 1236. The introduced version of that bill would not abolish the Board, but would change its operation in a number of significant respects. For example, that bill would require the Board to create and appoint a nine-member executive board to manage the Board's activities. In addition, LB 1236 would create a State Fair Foundation and a State Board of Agriculture Fund. LB 1236 would also prohibit members of the Legislature from serving on the Board, and would require the Board to comply with the Public Meetings Statutes. Under Section 8 of LB 1236, certain portions of the Nebraska Political Accountability and Disclosure Act would also apply to members of the Board.
On behalf of the Legislature's Agriculture Committee, you have posed several questions to us regarding the Board and the pending bills which would affect it. We will consider each of your questions in turn.
 Question 1: To what extent does the current arrangement for the conduct of a state fair and management of the state fairgrounds by a private corporation shield the state of Nebraska from liabilities that may arise out of the errors, omissions, or negligent actions of the Board of Agriculture, from causes of action that may arise from personal, environmental or other injuries that might occur on the property of the state fairgrounds, or from the debts or contractual obligations of the State Board of Agriculture?
Your initial question is a very broad question, the answer to which depends upon the facts of any given situation and the legal theories which may be advanced in the claim. Since we cannot know what those facts or theories might be in any particular case, we cannot answer your question except in very general terms. We will, however, endeavor to provide some insight.
The current arrangement certainly provides the State with protection from tort claims which might otherwise proceed against it were the Board deemed to be a state agency. Under the State Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209 through 81-9,235 (1996 and Cum. Supp. 2000), the State has waived its sovereign immunity from suit to allow certain types of tort actions to proceed against it in certain situations. The Tort Claims Act, however, specifically provides that it applies only to acts or omissions of "employees" and other officials of the State, and not to "contractors" with the State. § 81-8,210 (1), (3) and (4). Therefore, because the Board is a private entity which contracts with the State to perform certain services for the State, it is not covered by the State Tort Claims Act; and the State has not waived its immunity to permit tort claims against the State arising out of acts or omissions of the contractor. Indeed, in Crete Mills v. Nebraska State Board of Agriculture, 132 Neb. 244, 271 N.W. 684 (1937), which was decided long before enactment of the State Tort Claims Act, the court made it clear that the Board is essentially a private corporation and not a State entity which, absent the State Tort Claims Act, would be immune from suit. Accordingly, enactment of the State Tort Claims Act did not change the Board's status and did not imply that the State had agreed to be subject to suit for the wrongful acts or omissions of the State Board of Agriculture.
The current arrangement also provides protection to the State from contract claims which might be made against it were the Board to become a state agency. Like the State Tort Claims Act, the State Contract Claims Act, Neb. Rev. Stat. §§ 81-8,302 though 81-8,306 (1996 and Cum. Supp. 2000), exempts private corporations that are contractors with the State. § 81-8,303(3).
Further, the present arrangement protects the State from employment-related claims which might be made against the Board — e.g., employment discrimination claims made under federal and/or State law. Because the Board is currently essentially a private corporation, it would be deemed to be the "employer;" and the State would not be involved in any such claims.
In your opinion request letter you indicate that State Fair Park is property of the State, although the Board of Agriculture manages and maintains that property under a formal property management agreement with the Department of Administrative Services. There may be certain limited types of claims which could be made against the State simply because of its ownership of the property. For example, the owner of real estate may still be involved in litigation brought by an adjacent property owner claiming that pollutants have migrated from the former's property on to the latter's property. Thus, the current arrangement does not necessarily protect the State from those types of claims, except to the extent that the Board has contractually agreed to hold the State harmless.
Finally, it is apparent that the current arrangement means that the State is not responsible for the debts or contractual obligations of the Board.
 Question 2: If LB 961 were enacted, would the State Fair Commission assume the debts, liabilities and contractual obligations of the State Board of Agriculture without legislation expressly providing for such assumption? Is it necessary and possible to compel by legislation that the State Board of Agriculture transfer to the State Fair Commission any property, records and funds?
As we noted in our Opinion No. 01038, the Nebraska Supreme Court has indicated that the Board is a private business association as contemplated under the Uniform Disposition of Unclaimed Property Act, and that the Board is "essentially a private corporation" which is not immune from suit under the doctrine of sovereign immunity. State ex rel. Marsh v. Nebraska State Board of Agriculture, 217 Neb. 622, 350 N.W.2d 535
(1984); Crete Mills v. Nebraska State Board of Agriculture, 132 Neb. 244,271 N.W. 684 (1937). Based upon those cases, we concluded, in Opinion No. 01038, that the Board is a private corporation and not a state agency. Accord Op. Att'y Gen. No. 99038 (August 19, 1999); Op. Att'y Gen. No. 91087 (November 21, 1991); Op. Att'y Gen. No. 47 (March 27, 1985); 1977-78 Rep. Att'y Gen. 229 (Opinion No. 151, dated December 20, 1977).
In Nebraska, a corporation is generally viewed as a complete and separate entity from its shareholders and officers, who are not, as a rule, liable for the debts and obligations of the corporation. Baye v. Airlite Plastics Co., 260 Neb. 385, 618 N.W.2d 145 (2000); Nelson v. Lusterstone Surfacing Co., 258 Neb. 678, 605 N.W.2d 136 (2000). Consequently, it seems to us that the debts, liabilities and contractual obligations of the State Board of Agriculture, a private corporation, belong to the Board, and would not be assumed by a new State Fair Commission absent legislation which expressly provides for such an assumption. In that regard, we would note that failure to provide for such an assumption by a new State Fair Commission could raise issues pertaining to an unconstitutional impairment of the obligation of contracts under art. I, § 16 of the Nebraska Constitution.
Based upon the same notion that the Board is currently a private corporation separate and apart from state government, we also believe that it would be necessary to compel by legislation that the Board transfer to a new State Fair Commission any of the Board's property, records and funds which the Legislature wishes to make available to the new commission. However, while we believe that compelling such a transfer is possible, we would again caution that such a transfer must take into account art. I, § 21 of the Nebraska Constitution which provides that "[t]he property of no person shall be taken or damaged for public use without just compensation therefor."
 Question 3: LB 1236 would impose additional requirements upon the State Board of Agriculture, including: 1) that the Board comply with the Open Meetings Law, 2) extension of certain requirements of the Nebraska Political Accountability and Disclosure Act to Board Members, 3) the creation of a State Board of Agriculture Fund. Additionally, it has been suggested that LB 1236 be amended to provide that some members of the Board be appointed by the governor. Would enactment of LB 1236 with these provisions affect the conclusion reached in your earlier opinion that the Board is a private corporation and not an agency of the state?
As noted above, in the Crete Mills case, the Nebraska Supreme Court determined that the Board is "essentially a private corporation" which is not immune from suit under the doctrine of sovereign immunity. In the course of that opinion, the court discussed several things which led it to that determination, among them:
 1. The Board was originally created in 1858 as a body corporate with perpetual existence. In that regard the court stated:
 The record further demonstrates beyond peradventure that, as a fact, the original incorporators of this [State] board [of Agriculture] and their successors in interest, elected by them at the annual election, constituted a self-perpetuating body. The officers of this organization were continuously selected by the board, and its general policies were determined by the annual meeting at which the original incorporators and their successors in interest, by them selected, were supreme. The electors of the state generally had no voice in the proceedings of this board, and the political officers of the state exercised no powers of selection or appointment of its officers, or direction or control over its general business affairs.
Crete Mills, 132 Neb. at 249, 271 N.W. at 686.
 2. When the State Department of Agriculture was created as an executive agency of the State in the early 1900's, the Board was not included in that agency.
 3. The property of the Board was exempt from taxation under art. VIII, § 2 of the Nebraska Constitution as it existed then, not because the Board was a governmental agency, but because the Board was an agricultural society which did not use its property for financial gain or profit to its owners.
 4. The Board collected receipts from admissions to fairs, charges against concessions, and from other similar sources of income, and paid out and disbursed those funds through its own officers as if it were a private corporation. Those funds were not paid into the state treasury and drawn out of the state treasury by warrant.
As a result of those various factors, the court in Crete Mills concluded:
It is obvious, therefore, that neither the inherent nature of the Nebraska state board of agriculture, the manner in which its perpetuity is accomplished, the character of the business carried on, the method of its performance, nor the purpose sought to be attained, in any manner determines its character to be that of a public governmental agency, to which the principle of exemption from suit without assent of the state is applicable.
Crete Mills, 132 Neb. at 250, 251, 271 N.W. at 687.
As you pointed out in your third question to us, the introduced version of LB 1236 would impose additional requirements upon the Board, including compliance with the Public Meetings Statutes, compliance with the requirements of the Nebraska Political Accountability and Disclosure Act and creation of a State Board of Agriculture Fund which would include monies appropriated to the Board by the Legislature. We also understand that LB 1236 may be amended to require that a certain number of Board members must be appointed by the Governor in addition to those members appointed by county agricultural societies. Nevertheless, we do not believe that those various additional requirements on the Board would greatly affect the factors which influenced the court in Crete Mills. For example, the fact that the Governor might appoint some members of the Board would not change the fact that the bulk of its members are selected by means other than by election or by appointment of state officers.[1]
Nor would LB 1236 change the fact that there is no clear declaration in statute that the Board is a state agency, or the fact that the Board handles its own gate receipts and other revenues apart from state appropriations outside the state treasury, or the fact that the Board may still receive a tax exemption because it is an agricultural society.[2]
Finally, we also do not believe that LB 1236 would change the Board's origins as a body corporate with perpetual existence. For those various reasons, LB 1236 would not change the conclusion set out in our Opinion No. 01038.
Sincerely yours,
 DON STENBERG Attorney General
 Dale A. Comer Charles E. Lowe Assistant Attorneys General
Approved by:
________________________________ Attorney General
cc. Patrick J. O'Donnell Clerk of the Legislature
[1] Indeed, in the Crete Mills case, the court quotes the following language from a treatise with approval, "[t]he corporate character of [a private corporation] is not lost by reason of the fact that the state may control the appointment of some of the directors." Crete Mills, 132 Neb. at 252, 271 N.W. at 687.
[2] Art. VIII, § 2 of the Nebraska Constitution, cited by the court in Crete Mills, still allows the Legislature to exempt property owned by agricultural and horticultural societies from taxation when "such property is not owned or used for financial gain or profit to either the owner or user."